2003 VT 51

**ALPINE HAVEN PROPERTY OWNERS ASSOCIATION, INC. v. Edward DEPTULA, Bertrand and Joseph Emmett, David Orrock, Frederick and Laura Snyder, Deborah Upshall, Esther Verheist, and Susan White**

[830 A.2d 78]

No. 02-035

¶ 1. June 4, 2003. Defendants Edward Deptula and Bertrand and Joseph Emmett, homeowners in the Alpine Haven development, appeal a summary judgment order to pay three years of overdue fees, plus interest and costs, for road maintenance and other services rendered by plaintiff Alpine Haven Property Owners Association, Inc. (the Association). Defendants argue that the trial court erred by (1) entering judgment against defendant Deptula in the full amount claimed based on the doctrine of collateral estoppel; (2) applying the Uniform Common Interest Ownership Act of 1994 (UCIOA), 27A V.S.A. §§ 1-101 to 4-120, in resolving the dispute against the other defendants; (3) dismissing defendants' accord and satisfaction defense and consumer fraud counterclaim; and (4) improperly granting the Association summary judgment. We affirm in part, reverse in part, and remand.

¶ 2. This case began as a collection action filed by the Association against a small group of homeowners, including defendants on appeal, for fees owed for three annual assessment periods (from November 1, 1996 to October 31, 1999). The dispute, however, goes back much further than that. The Alpine Haven development was founded in the 1960s and, at the time of this dispute, included approximately eighty units, mostly chalets. Pursuant to deed covenants, the original developer, Alpine Haven, Inc., provided defendants with garbage removal and street lighting, and maintained roads within the development, in return for a "reasonable annual fee." The developer later constructed a swimming pool, tennis courts, and other recreational facilities to which individual homeowners could subscribe for a separate fee.

¶ 3. In the late 1970s, fees for deeded services began to increase, leading to more than ten lawsuits between the developer and certain homeowners over the reasonableness of the fees. In one of those actions, Deptula sought a declaratory judgment in Franklin Superior Court that the developer had breached the deed covenants and that the fees assessed by Alpine Haven, Inc. over the previous five years were excessive. In its 1992 decision, the court held that a common scheme existed for the maintenance

of street lighting and rights-of-way, and thus Deptula was obligated to contribute rateably to these services, although he was not obligated to pay for optional services such as garbage removal and private driveway plowing. The court found the $1,200 per year charged by the developer to all lot owners was reasonable. However, the court allowed Deptula to subtract the average costs of driveway plowing and garbage removal, since he did not receive those services, and found that the fair and equitable fee for the remaining services was $1,050 per year. For future years, the court required that the percentage increase assessed against Deptula must be equal to the percentage increase for all other lot owners in the community, and warned that Deptula could become liable for litigation expenses if he refused to pay. The litigation continued, however, and in 1996, in one of six small claims actions between Deptula and Alpine Haven, Inc., the Orleans Superior Court ordered Deptula to pay $1,102.50 per year — a five percent increase over the 1992 superior court judgment. This increased amount was also assessed against all other lot owners in the community receiving the same services.

¶ 4. That same year a majority of the community's homeowners formed the Alpine Haven Property Owners Association, Inc., and contracted with the soon-to-retire developer to purchase and assume ownership of the development's common lands, roads, and recreational facilities and to provide all deeded and recreational services. Although membership was initially granted to all homeowners in the development, some homeowners, including defendants, opted out of the Association. As a result, during the period in dispute (November 1, 1996 to October 31, 1999), nonmembers were provided deeded services only — garbage removal, street lighting, and road maintenance and snow removal — while members were provided all deeded ser-

vices plus access to recreational facilities. Nonmembers were billed a base fee as established by the 1992 and 1996 Deptula judgments, plus an annual increase based on the Consumer Price Index, and, since 1998, a pro rata share of payments on a Federal Emergency Management Agency (FEMA) loan to repair flood-damaged community roads. Members were billed a pro rata share of all expenses remaining after the nonmembers' fee assessment was subtracted from the annual budget.

¶ 5. Since the Association took over on November 1, 1996, defendants have refused to pay the full assessment. In 1997, the Association sued to collect, initiating this case. Defendants counterclaimed and moved for summary judgment, alleging, inter alia, unreasonably high fees, accord and satisfaction, and violation of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g. The Association then cross-moved for summary judgment to dismiss all counterclaims. The trial court issued two decisions. In its first decision, the court dismissed all of Deptula's counterclaims and granted summary judgment against Deptula for the full amount claimed, plus costs and interest, on the grounds that the 1992 and 1996 judgments precluded him from relitigating the reasonableness of the fee assessments. The court also dismissed all counterclaims raised by the remaining defendants, but held that triable issues remained with respect to the affirmative defense of accord and satisfaction. The court ordered an evidentiary hearing on two questions: (1) the defense of accord and satisfaction for defendants other than Deptula, and (2) the Association's compliance with the UCIOA's requirements for common assessments as provided in 27A V.S.A. § 3-115. The court specifically held that the Association did not have to prove the reasonableness of its fees at the hearing.

¶ 6. After the hearing, the court issued a second decision, determining that there

was no genuine issue of material fact that the Association had not substantially complied with the UCIOA, and that the fees were therefore valid. The court did state, however, that

> [t]he defendants' underlying defenses attack the reasonableness of the rate structure for the fees claimed. Nothing in the factual presentation infers that the rate structure is not reasonable. To the contrary, repeated judicial determinations have reached that conclusion. In addition [to] the Uniform Common Ownership Act of 1994, the plaintiff may rely upon those decisions to support a finding of reasonableness. The defendants' response claims that if given time and enough records they could fashion a more reasonable rate structure. As noted in the prior finding of December 7, 2000, they seek veto over the rate structure. They have [not][1] demonstrated the existence of any genuine issue of material fact on this issue.

¶ 7. The court issued judgment for the Association without directly mentioning the accord and satisfaction defense and granted judgment, labeled "summary judgment," in favor of the Association. Shortly thereafter, the court issued judgment against all defendants in the full amount claimed, plus costs and interest, and, in Deptula's case, attorney fees. Defendants Deptula and the Emmetts subsequently filed the instant appeal.

¶ 8. In reviewing a grant of summary judgment,[2] we use the same standard as the trial court, and affirm the granting of a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 313, 779 A.2d 67, 70 (2001); V.R.C.P. 56(c). When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged. *Bixler v. Bullard*, 172 Vt. 53, 57, 769 A.2d 690, 694 (2001).

¶ 9. Before we address the issues specific to each defendant, we must first address defendants' common challenge to the application of the Uniform Common Interest Ownership Act to this dispute. This action deals with fees assessed in 1996, 1997, and 1998 for assessment years that each run from November 1 of the relevant year through October 31 of the following year. The UCIOA was enacted in 1998 to become effective on January 1, 1999, *after* the last assessment in this case on November 1, 1998. 1997, No. 104 (Adj. Sess.), § 3 (codified as amended at 27A V.S.A. §§ 1-101-1-208). Under § 1-204(a) of the UCIOA, preexisting common interest communities are subject to the Act in part, but "only with respect to events and circumstances occurring after the effective date of this law." Because none of the events and circumstances in this case occurred after the effective date of the Act, we agree

---

[1] It appears clear in context that the court unintentionally omitted the word "not" from the last sentence of numbered paragraph 4 of its decision.

[2] For purpose of this appeal, we assume that the court's decision following the evidentiary hearing was a summary judgment decision as the court labeled it. In fact, neither party has disagreed with the court's characterization of its judgment, and the nature of the court's judgment is not determinative of any issue raised in the appeal.

with defendants that the UCIOA does not apply.

¶ 10. Although much of the briefing has been dominated by the issue of the applicability of the UCIOA, the Act has only limited significance to the issues on appeal. The trial court relied upon it solely to determine that the fees assessed against the Emmetts were reasonable. Because we conclude, however, that the record clearly shows that there is no genuine issue of material fact that the fees assessed by the Association were not unreasonable, and the trial court so found, we affirm the grant of summary judgment on alternate grounds. See *Dicks v. Jensen*, 172 Vt. 43, 49, 768 A.2d 1279, 1284 (2001) (affirming summary judgment on alternate grounds); *Sorge v. State*, 171 Vt. 171, 174 n.∗, 762 A.2d 816, 818 n.∗ (2000) (Court may affirm trial court's decision despite improper rationale if correct result was reached). The court's error in applying the UCIOA is harmless.

¶ 11. We first consider the arguments raised by Deptula. Deptula contends that the court: (1) erred by prohibiting him, under the doctrine of collateral estoppel, from contesting the reasonableness of the assessments; (2) compounded the above error by prohibiting him from introducing evidence on the defense of accord and satisfaction; and (3) improperly issued summary judgment in favor of the Association sua sponte. We disagree on all three points.

¶ 12. As stated above, Deptula's deed requires him to pay a "reasonable annual fee" for the services specified in the deed — maintenance of roads, snow removal from the roads, street lighting, and water service. At the time of this litigation, Deptula had been unsuccessful in seven previous attempts to legally contest the service fees assessed by Alpine Haven, Inc. In the primary litigation on which plaintiff relies, the 1992 Franklin Superior Court action, the court held that the "fair and equitable maintenance fee" for

street maintenance and plowing and street lighting was $1,050 per year. In a subsequent small claims action, the court found a fee of $1,102.50 would be reasonable for 1994-95, reflecting the amount set in the superior court action updated by the percentage increase for all owners in the development. The Association argues here, as it did below successfully, that issue preclusion prevents Deptula from relitigating the reasonableness of the fee in this action.

¶ 13. Collateral estoppel, or issue preclusion, bars the subsequent relitigation of an issue that was actually litigated and decided in a prior case where that issue was necessary to the resolution of the dispute. *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). We have said that issue preclusion should only be found when

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Id.* We have also held that issue preclusion should not apply to cases litigated in small claims court. See *Cold Springs Farm Dev., Inc. v. Ball*, 163 Vt. 466, 471, 661 A.2d 89, 92 (1995)[3] (giving preclusive

---

[3] We agree with defendant that under *Cold Springs Farm Development* we cannot give preclusive effect to the small claims decision covering the 1994-95 assessment year. In fact, that decision relied upon the preclusive effect of the 1992 superior court decision and updated the allowed fee amount to reflect average increases to other lot owners, a calcula-

effect to small claims adjudications is inconsistent with the simplicity and informality of small claims procedures and would chill the use of small claims courts).

¶ 14. Deptula first argues that there is no privity between Alpine Haven, Inc. and the Association because Alpine Haven did not expressly convey to the Association its right to enforce the judgment against Deptula. The failure of Alpine Haven, Inc. to assign its judgment to the Association is irrelevant; the privity requirement relates to the party against whom issue preclusion is being asserted, not the party that is asserting issue preclusion. See *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. Deptula was a party in the prior action; thus the privity requirement is satisfied.

¶ 15. Deptula also argues that the factual circumstances in the current litigation are so different from the issues heard in 1992 that it would be inequitable to hold him to the earlier result. "In deciding upon the application of issue preclusion, we balance our 'desire not to deprive a litigant of an adequate day in court' against 'a desire to prevent repetitious litigation of what is essentially the same dispute.'" *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 60, 615 A.2d 141, 145-46 (1992) (quoting Restatement (Second) of Judgments § 27 cmt. c (1982)). Factors we have examined to determine whether "essentially the same dispute" is involved include: whether there is a substantial overlap in the evidence and argument between the two proceedings; whether the same rule of law is involved; whether pretrial preparation and discovery in the first case covered the issues in the second proceeding; and how closely the claims in the two proceedings are related. *Id.*

¶ 16. In the current action, Deptula seeks to again challenge the reasonableness of the fees. While he points to some changes — services are provided by a nonprofit organization rather than a for-profit venture, the Association no longer provides a discount for early payments, the Association uses separate fee structures for members and nonmembers, and the fees include an extra charge for capital improvements (the FEMA loan) — it is undisputed that the services provided by the Association are identical to those provided by Alpine Haven, Inc. Similarly, Deptula does not contest that the fees charged by the Association are expressly based on the fee formula found to be fair and equitable in the prior judgment.[4] We note that the FEMA loan, which is the only new charge, is distributed on a per lot basis as required by the prior judgment. Thus, we have no trouble in concluding that the dispute over the reasonableness of the fees in this case involves "essentially the same dispute" as the prior action and that the claims, arguments, evidence, and discovery are virtually identical in the two cases. See *Berlin Convalescent Ctr.*, 159 Vt. at 60, 615 A.2d at 145-46. Because Deptula lost and did not appeal the judgment in the prior

---

tion defendants do not contest. We note this decision only to show the continuing litigation between the parties.

[4] Defendants did claim that increases in their annual fees were not linked to the increases in the annual assessments paid by members. The evidence was that the Association first adjusted the fee charged to nonmembers to reflect inflation and, based on that income and budgeted expenses, calculated the members' assessments. To make this system work, members are billed on a different cycle than nonmembers. As explained in ¶ 23, while this system did not mean that defendants' increases mirrored those of members, any discrepancy benefitted nonmembers, who faced a lower total cost than members over the three-year period involved in this suit.

case, he remains bound by the result. See *id.* at 57, 615 A.2d at 144 (both claim and issue preclusion protect the courts and the parties against the burden of re litigation, encourage reliance on judicial decisions, and prevent vexatious litigation).

¶ 17. Much of Deptula's arguments are based on his claim that fees must be calculated on a cost basis, and that costs changed when the Association took over the common property and roads. The deeds, however, require the payment of a reasonable annual fee, not a pro rata share of actual costs. A fee is a charge for labor or services. See, e.g., Black's Law Dictionary 629 (7th ed. 1999). Courts must enforce contracts as they are written, and may not ignore their provisions. *Roy's Orthopedic, Inc. v. Lavigne*, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985). Where the language of a contract is clear, as it is here, the parties are bound by the common meaning of the words that they chose to express the content of their understanding. *Id.* Thus, the Association is not limited to charging only costs, but may assess a reasonable fee for its services. Cf. *Lee v. Magnuson*, 660 P.2d 1095, 1097 (Or. Ct. App. 1983) (declining to limit fees for use of an airstrip to maintenance and repair costs when deed covenants obligated mutual beneficiaries to pay a reasonable annual fee). More importantly, the reasonableness of the fee does not depend on which entity was to receive it.

¶ 18. Deptula's accord and satisfaction defense fails for similar reasons. Deptula asserts accord and satisfaction with respect to one of the three years at issue in this litigation. For that year, he sent a check to the Association treasurer in the amount of $278.59. The check was accompanied by a letter stating that he refused to pay the billed amount because the Association provided "no substantiation" that the billed amount reflected the actual cost of road maintenance for his lot. The Association deposited the check after writing "without prejudice" on it.

Under *Frangiosa v. Kapoukranides*, 160 Vt. 237, 244, 627 A.2d 351, 355 (1993), the reservation of rights language the Association added to the check would have avoided defendant's accord and satisfaction defense. However, the law was changed by the Legislature's addition of § 3-311 to the Uniform Commercial Code. See 1993, No. 158 (Adj. Sess.), § 12, eff. Jan. 1, 1995. With respect to payments "by use of instrument," the law of accord and satisfaction is now governed by § 3-311.

¶ 19. Under 9A V.S.A. § 3-311(a), accord and satisfaction may apply if the person against whom the claim is asserted acts "in good faith" in tendering the instrument in full satisfaction of the claim and does so with respect to a claim that is "unliquidated or subject to a bona fide dispute." *Id.* § 3-311(a)(i), (ii). At least in part, the section is intended to codify the common law of accord and satisfaction. *Id.* § 3-311, cmt. 3. Our common law has required a bona fide dispute as to the amount owed. See *Adams v. B.P.C., Inc.*, 143 Vt. 308, 309-10, 466 A.2d 1170, 1171 (1983). In *Adams*, this Court quoted *Loizeaux Builders Supply Co. v. Donald B. Ludwig Co.*, 366 A.2d 721, 726 (N.J. Super. Ct. 1976), as follows: "While it is not necessary that the dispute or controversy should be well-founded, it is necessary that it should be in good faith. Without an honest dispute, an agreement to take a lesser amount in payment of a liquidated claim is without consideration and void." *Id.* at 311, 466 A.2d at 1172. "Good faith" under the UCC means "honesty in fact and the observance of reasonable commercial standards of fair dealing." 9A V.S.A. § 3-103(a)(4).

¶ 20. We conclude that the trial court had sufficient undisputed facts before it to find that Deptula did not act in good faith in disputing the assessment bill for 1996-97, and that the bill was not subject

to a bona fide dispute.[5] Deptula had litigated his arguments that the assessment amounts were excessive and unfair in the 1992 action and lost, and thereafter lost in successive years when the developer was required to sue him to obtain payment of the assessment. By the time that Deptula sent the check for which he claims accord and satisfaction, he no longer was raising a "bona fide dispute" over the amount owed or acting "in good faith." We thus reject his defense of accord and satisfaction.

¶ 21. Finally, Deptula contends that it was error for the court in its initial decision to grant summary judgment for the Association sua sponte. There was no error. V.R.C.P. 56(c)(3) specifically authorizes the court to issue summary judgment against the moving party when appropriate. Once the court concluded that Deptula was precluded from relitigating the reasonableness of the fee, and dismissed each of his defenses and counterclaims, the matter became ripe for summary judgment since there were no remaining issues of material fact and the Association was entitled to judgment as a matter of law.

¶ 22. We turn now to the arguments raised by the Emmetts. The Emmetts' primary argument is that the fee structure used for nonmembers, including the Emmetts, is unreasonable because it is based upon the formula established under the 1992 and 1996 cases against Deptula, rather than a pro rata share of the actual costs of services rendered. Although the trial court's second summary judgment decision is based primarily on the Uniform Common Interest Ownership Act, it did rule secondarily that defendants had not shown that the fees charged by the Association were unreasonable.

¶ 23. Again, we emphasize that the Emmetts' deed, like the Deptula deed, allows the Association to collect a reasonable fee, as opposed to requiring a pro rata share of actual costs. Thus, we reject the central contention of their argument that a nonmember fee amount that is not based on current costs is unlawful. We also conclude, based on the record, that the different fee systems for members and nonmembers have not resulted in unfair assessments. It is true that members and nonmembers were billed on different billing cycles. The total assessments paid over the three years at issue, however, were $4,275.50 by each member compared to only $3,382.99 by each nonmember. Even subtracting $250 per year from the total costs to each member to reflect costs for members' access to recreational facilities,[6] the three-year costs to members ($3,525.50) was still greater than the three-year cost to nonmembers. Thus, the use of the old formula was reasonable since it actually resulted in lower total rates over the three years for nonmembers.

¶ 24. Second, the Emmetts contend that by virtue of the separate fee structures, nonmembers were subsidizing members' access to recreational facilities and other services denied to nonmem-

---

[5] Deptula makes an independent argument that the court did not permit any evidence to be presented on his accord and satisfaction defense. Deptula moved for summary judgment on this defense and included all the facts he believed were relevant, and the court ruled on those facts. According to V.R.C.P. 56(c)(3), the court could award summary judgment in favor of the Association on the issue when it concluded that there were no material facts in dispute and the law supported the Association's position.

[6] This figure is based on the extra $250 that the original developer, Alpine Haven, Inc., charged to any lot owner who desired access to recreational facilities, over and above the $1,102.50 charged to all lot owners.

bers. As noted above, the three-year costs to members was greater than the three-year cost to nonmembers, even excluding the extra costs charged to members for access to recreational facilities. Thus, we see no subsidy. Instead, we find that the current fee structure is reasonable since it closely parallels the former fee structure.

¶ 25. Third, the Emmetts complain that the old fee formula incorporated the costs of capital improvements for roads and lighting, whereas the Association added a special assessment for capital improvements. Defendants' exhibits show that the road infrastructure had significantly deteriorated under the later years of the original developer's tenure, and as a result needed $78,000 in repairs when the Association took over. More to the point, the particular costs defendants complain of are the payments on a low-interest loan from FEMA to repair extensive damage from a July 1997 flood. The Association has distributed the costs of this loan pro rata among all members and nonmembers who live along the common right-of-way. As a matter of law, it is reasonable to distribute the cost of improvements equally among the common beneficiaries of the right-of-way. See *Hubbard v. Bolieau*, 144 Vt. 373, 375, 477 A.2d 972, 973 (1984) ("[W]hen several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit.") (internal quotation marks omitted). Thus, the Emmetts have failed to demonstrate the existence of any genuine issue of material fact that the special assessment for the FEMA loan was unreasonable.

¶ 26. Considering the entire record, we agree with the trial court that the Emmetts have raised no genuine issue of material fact showing that the nonmembers' rate structure or fees were unreasonable. Indeed, repeated judicial determinations have reached the same conclusion. Although none of those judgments are binding on the Emmetts, the Association's reliance on these judgments to calculate the assessment for nonmembers lends support to the finding that the Association's rates were at all times reasonable.

¶ 27. The Emmetts next assert that the court erred by dismissing their affirmative defense of accord and satisfaction regarding a $300 check the Emmetts proffered as full payment of their 1996-97 assessment. The facts with respect to this claim are similar to those discussed with regard to Deptula. The Emmetts complained about a lack of "accounting of your nonprofit business" and claimed to calculate the amount owed from an Association report. The Association also wrote "without prejudice" on the Emmetts' check. There are, however, two differences between the Emmetts' defense and the Deptula defense. First, as acknowledged by the trial court, the Emmetts' circumstances were more ambiguous. They had refused to pay in the past, but had settled claims without a decision against them. Thus, issue preclusion did not apply to them. Second, and presumably because of the first difference, the trial court treated these defenses differently. In its first summary judgment decision, it stated, "With the exception of Mr. Deptula, the Court has not excluded, as a matter of law, the accord and satisfaction affirmative defense raised by other defendants for consideration *at trial*." (Emphasis added.) After taking evidence, some of which related to the Emmetts' accord and satisfaction defense, the court failed to mention the accord and satisfaction issue in its second summary judgment decision. It did, however, grant summary judgment for plaintiff against all defendants, leaving nothing left to litigate.

¶ 28. Although the record is far from clear, we interpret the trial court as holding that it could not find a lack of good faith or a bona fide dispute as a matter of law, and that it would make a finding

based on the evidence presented; the court, however, proceeded to overlook the issue. We thus agree that summary judgment was inappropriate on the Emmetts' accord and satisfaction defense for the 1996-97 assessment and reverse and remand the judgment against the Emmetts on that issue alone.

¶ 29. Finally, the Emmetts argue that the Association violated the Vermont Consumer Fraud Act in knowingly misrepresenting the cost of services by billing nonmembers based on the 1992 and 1996 judgments, rather than by setting rates based on actual costs. The Consumer Fraud Act makes unfair or deceptive acts or practices in commerce unlawful. 9 V.S.A. § 2453(a). We agree with the trial court that there is nothing unfair or deceptive about adhering to court orders or to setting a reasonable fee based upon them. Moreover, there was no attempt at deception. The Association at all times disclosed the basis for the fee assessment to nonmembers, which in fact was the same formula in use since the 1988 assessment. Thus, on these facts, the court properly dismissed the counterclaim for failure to make out the statutory elements of consumer fraud. See *Poplaski v. Lamphere*, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) ("Summary judgment is mandated under the plain language of V.R.C.P. 56(c) where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he has the burden of proof at trial.") (internal quotation marks omitted).

*The judgment against Edward Deptula is affirmed. The judgment against Bertrand and Joseph Emmett for fees assessed for 1996-97 is reversed and remanded for proceedings consistent with this decision; the remainder of the judgment against Bertrand and Joseph Emmett is affirmed.*