2003 VT 74

## Peggy Stevens and Doreen Jarvis v. Theodore R. Stearns, et al.

[833 A.2d 835]

No. 02-077

Present: Amestoy, C.J., Dooley, Morse* and Johnson, JJ., and Carroll, Supr. J., Specially Assigned

Opinion Filed August 1, 2003
Motion for Reargument Denied September 2, 2003

---

* Justice Morse sat for oral argument but did not participate in this decision.

430

*Franz P. Frechette* of *Frechette Law Office, PLLC,* Brattleboro, and *Gary H. Schall,* Tunbridge, for Plaintiffs-Appellants.

*William H. Sorrell,* Attorney General, Montpelier, and *Mark J. Patane,* Assistant Attorney General, Waterbury, for Defendants-Appellees.

¶ 1. **Amestoy, C.J.** This case stems from defendants' unannounced inspection of plaintiffs' property, conducted pursuant to the terms of a probation order that had allegedly expired. Plaintiffs initially sought relief against defendants in federal court and then filed the instant action, raising various tort and constitutional claims. The trial court granted summary judgment for defendants, finding them entitled to immunity after giving preclusive effect to the federal court's determination that defendants had performed discretionary acts in an "objectively reasonable" manner. Plaintiffs argue that issue preclusion is inappropriate here because the standard for establishing qualified immunity in cases involving alleged violations of Chapter I, Article Eleven of the Vermont Constitution should be more stringent than those cases involving qualified immunity for alleged Fourth Amendment violations brought under 42 U.S.C. § 1983. We affirm.

¶ 2. After ninety-two animals were seized from her property, plaintiff Peggy Stevens was charged with multiple counts of animal cruelty. She was convicted of one count and sentenced on April 18, 1996 to three to six months, suspended, with a stipulated year's probation. Stevens' probation order required that she allow unannounced inspections of her property, and it contained the parties' stipulation that probation would last one year. The order also stated that Stevens would remain on probation "until further order of the Court." Stevens did not sign the order until August 6, 1996.

¶ 3. On July 11, 1997, Probation Officer Theodore Stearns conducted an unannounced inspection of Stevens' property. Defendants Susan Skaskiw, Linda Noiseux, and Pat Audsley, humane society volunteers, accompanied Officer Stearns and acted under his authority. Over Stevens' objections, defendants inspected her home and the surrounding premises, including the room in which plaintiff Doreen Jarvis was living. Officer Stearns noted several probation violations, which the State declined to prosecute. On July 28, 1997, the district court ostensibly discharged Stevens from probation.

¶ 4. In April 1998, Stevens and Jarvis filed suit in state court against defendants Stearns, Skaskiw, Noiseux, Audsley, William Eck, Jr., the Department of Corrections, and the State, seeking damages under 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment of the United States Constitution, and asserting state law claims for invasion of privacy, negligent and intentional infliction of emotional distress, breach of contract, and gross misconduct. The case was subsequently removed to federal court.

¶ 5. In June 1999, the federal district court dismissed plaintiffs' state law claims without prejudice and granted defendants' motion for summary judgment. The court found the individual defendants entitled to qualified immunity after applying the objective good faith test enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). According to the court, the undisputed record, viewed objectively, suggested that defendants acted reasonably in conducting their search. The court pointed to the absence of a specific termination date on Stevens' probation order, the confusing statement that probation lasted "until further order of the Court," and Stevens' delayed execution of the probation agreement. These facts, the court concluded, could reasonably lead one to believe that a gap existed between Stevens' sentencing and the commencement of her probation. Thus, a reasonable probation officer could conclude that Stevens was still on probation at the time of the search.

¶ 6. On reconsideration, plaintiffs challenged the court's finding that the probation order was ambiguous regarding its commencement date. Plaintiffs presented new evidence suggesting that defendants Stearns and Eck subjectively believed that Stevens' probation began April 18, 1996. The court rejected this argument, finding defendants' subjective beliefs irrelevant to the qualified immunity inquiry. The court explained that, even if defendants had assumed that Stevens' probation began April 18, 1996, the following facts remained: (1) there was a substantial lapse between Stevens' sentencing and the date she

assented to her conditions of probation and (2) Vermont law does not define when probation is deemed to start under these circumstances. Thus, viewed objectively, and in the absence of state law to the contrary, a reasonable probation officer could conclude that by signing the probation order on August 6, 1996, Stevens had agreed to submit to probation until August 6, 1997.

¶ 7. The United States Court of Appeals for the Second Circuit affirmed this decision in June 2000. The appeals court agreed that, in light of the ambiguity in the probation order regarding its effective date, and in the absence of any clear guidance under Vermont law, it was objectively reasonable for an officer in Stearns' position to believe that the probation order was still in effect on July 11, 1997. Plaintiffs appealed, and the United States Supreme Court subsequently denied certiorari. See *Stevens v. Stearns*, 213 F.3d 626 (2d Cir.) (table), *cert, denied*, 531 U.S. 1055 (2000).

¶ 8. In February 2000, plaintiffs filed suit in state court against the same defendants, asserting claims for invasion of privacy, trespass, intentional and negligent infliction of emotional distress, and conversion, as well as claims for damages directly under the Vermont Constitution. The trial court granted defendants' motion for summary judgment, finding the individual defendants entitled to qualified immunity and the State entitled to sovereign immunity after giving preclusive effect to the federal court's findings. The court granted plaintiffs' motion for reconsideration and reaffirmed its order. This appeal followed.

¶ 9. Plaintiffs now argue that: (1) Chapter I, Article Eleven of the Vermont Constitution supports a direct claim for damages; (2) issue preclusion is inapplicable; (3) defendants are not entitled to qualified immunity; (4) the State subjected Stevens to additional probation time without due process of law; and (5) the State is not entitled to sovereign immunity. Plaintiffs have not adequately raised or sufficiently briefed claims (4) and (5), and we therefore decline to address them. See *State v. Taylor*, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) (Court will not consider issues not adequately raised or briefed except in rare circumstances).

¶ 10. We review a grant of summary judgment using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c). A party is entitled to summary

judgment if he presents at least one legally sufficient defense that would bar a plaintiff's claims. *Smith v. Day*, 148 Vt. 595, 597, 538 A.2d 157, 158 (1987).

¶ 11. We first address plaintiffs' claim regarding the applicability of collateral estoppel because we find resolution of this issue dispositive. Plaintiffs assert that collateral estoppel should not apply because their state law claims raise a different issue than that decided by the federal court. Specifically, plaintiffs argue that the legal standard for evaluating qualified immunity in cases involving alleged violations of Article Eleven should be more stringent than the standard used by the federal court to evaluate plaintiffs' Fourth Amendment claims. We find plaintiffs' arguments unavailing. As discussed below, the objective good faith test employed by the federal court is the appropriate standard for evaluating qualified immunity here. Given this, and plaintiffs' reliance on the same claims and facts as those presented in federal court, we conclude that collateral estoppel was appropriately invoked. Defendants are therefore entitled to qualified immunity as a matter of law.

¶ 12. The doctrine of collateral estoppel or issue preclusion "bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 144 (1992) (internal quotation marks and citation omitted). It is designed to "protect the courts and the parties against the burden of relitigation, encourage reliance on judicial decisions, prevent vexatious litigation and decrease the chances of inconsistent adjudication." *Id.* at 57, 615 A.2d at 144. Issue preclusion applies to issues of fact as well as law. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 209, 790 A.2d 408, 416 (2001).

¶ 13. Issue preclusion is appropriate when the following elements are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as that raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair. *Berlin Convalescent Ctr., Inc.*, 159 Vt. at 56-57, 615 A.2d at 144. In deciding whether issue preclusion is appropriate, "we balance our 'desire not to deprive a litigant of an adequate day in court' against a 'desire to prevent repetitious litigation of what is

essentially the same dispute.'" *Id.* at 60, 615 A.2d at 145-46 (quoting Restatement (Second) of Judgments § 27 cmt. c. (1982)).

¶ 14. In evaluating defendants' immunity from plaintiffs' 42 U.S.C. § 1983 claims, the federal courts applied the objective good faith standard enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under this standard, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* In other words, liability generally turns on the "objective legal reasonableness" of an official's action, assessed in light of clearly established legal rules and the information possessed by the defendants. *Anderson v. Creighton*, 483 U.S. 635, 639, 641 (1987). An official's subjective beliefs are irrelevant. *Id.* at 641.

¶ 15. We apply the same standard to evaluate defendants' immunity from plaintiffs' state law claims. Under state law, "lower-level government employees are immune from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority." *Hudson v. Town of East Montpelier*, 161 Vt. 168, 171, 638 A.2d 561, 563 (1993). We use the *Harlow* standard to evaluate whether an official acted in good faith. *Sabia v. Neville*, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996). Thus, "[g]ood faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." *Murray v. White*, 155 Vt. 621, 630, 587 A.2d 975, 980 (1991) (internal footnote omitted). The good faith inquiry "does not ask whether plaintiff's rights were violated, but rather whether the official reasonably should have known that what she was doing violated plaintiff's rights." *Id.* An official's subjective intent is irrelevant. See *Levinsky v. Diamond*, 151 Vt. 178, 198-99, 559 A.2d 1073, 1087 (1989) (rejecting subjective inquiry into whether official acted in good faith), *overruled on other grounds, Muzzy v. State*, 155 Vt. 279, 280 n.∗, 583 A.2d 82, 83 n.∗ (1990).

¶ 16. Plaintiffs' arguments on appeal rest entirely on their assertion that we should recognize a claim for damages directly under Chapter I, Article Eleven of the Vermont Constitution, analogous to the United States Supreme Court's recognition of a private damages action against federal officials for alleged Fourth Amendment violations. See *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971). Plaintiffs assert that, if we were to recognize such a cause of action, we would need to apply a more

stringent qualified immunity test than that applied by the federal court because Article Eleven provides broader protection than the Fourth Amendment. Thus, plaintiffs argue, issue preclusion would be inappropriate.

¶ 17. Plaintiffs assert that applying the objective good faith standard to evaluate defendants' qualified immunity from their Article Eleven claim would: "(1) erode the well established greater protections afforded under Article 11 to the comparatively lower level of the Fourth Amendment; (2) thereby derogating the central role of the Vermont Judiciary in Article 11 jurisprudence; and (3) would produce the paradoxical result of the same constitutional provision affording greater protection to the criminal defendant than it would the civil plaintiff." In light of these concerns, plaintiffs suggest that we replace the objective good faith test with a "substantial certainty" test that would ask whether a reasonably prudent law enforcement officer would be substantially certain that a warrantless search was lawful, in light of the information possessed at the time of the search. Alternatively, plaintiffs propose that we impose a "heightened" standard of reasonableness when applying the objective good faith test to Article Eleven claims.

¶ 18. We have not yet addressed whether Chapter I, Article Eleven of the Vermont Constitution supports a direct claim for money damages. To evaluate whether such a claim is appropriate, we ask whether Article Eleven is "self-executing," and if so, whether money damages are available as a remedy. *Shields v. Gerhart*, 163 Vt. 219, 222, 658 A.2d 924, 927 (1995). A constitutional provision is self-executing if it "supplies a sufficient rule by means of which the right given may be enjoyed and protected." *Id.* at 224, 658 A.2d at 928 (internal quotation marks and citation omitted). In making this determination, we examine whether the constitutional provision describes the right in detail, including the means for its enjoyment and protection; whether it contains a directive to the legislature for further action; whether the legislative history indicates the provision's intended operation; and whether a conclusion that a provision is or is not self-executing would be consistent with the scheme of rights established in the constitution as a whole. *Id.*

¶ 19. Once we determine that a constitutional provision is self-executing, we must also examine whether a claim for money damages is appropriate. See *Shields*, 163 Vt. at 227-28, 658 A.2d at 930. When the legislature has not fashioned an adequate remedial scheme, "it may be appropriate to imply a monetary damages remedy to enforce

constitutional rights." *Id.* at 234, 658 A.2d at 934. However, where the legislature has provided a remedy, "although it may not be as effective for the plaintiff as money damages, we will ordinarily defer to the statutory remedy and refuse to supplement it." *Id.* at 234-35, 658 A.2d at 934.

¶ 20. We need not decide here whether *Shields* supports a private claim for money damages under Article Eleven because we reject plaintiffs' premise that the standard for evaluating an official's qualified immunity depends on the constitutional right asserted. The establishment of a *Bivens*-like claim does not resolve the standard of immunity available to governmental officials. See *Butz v. Economou*, 438 U.S. 478, 486 (1978). "*Bivens* established that compensable injury to a constitutionally protected interest could be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts, but [it] reserved the question whether the agents involved were immune from liability . . . ." *Id.* (internal quotation marks and footnote omitted).

¶ 21. The United States Supreme Court's subsequent determination that federal executive officials exercising discretion are entitled to qualified immunity in "suit[s] for damages arising from *unconstitutional action*," *id.* at 507 (emphasis added), did not suggest that the standard for qualified immunity be adjusted according to the constitutional right allegedly violated. Indeed, it would have been illogical for the Court to have done so, since the purpose of qualified immunity is "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Id.* at 506. Thus, even where a state court has concluded that an individual is entitled to recover money damages for injuries resulting from the violation of a state constitutional right to be free from unreasonable searches, the test for qualified immunity is the same; it remains the same "under any action arising from the state constitution." *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990).

¶ 22. Under both the Fourth Amendment and Article Eleven, plaintiffs enjoy the right to be free from unreasonable searches and seizures. See, e.g., *State v. Berard*, 154 Vt. 306, 309, 576 A.2d 118, 120 (1990); *State v. Lockwood*, 160 Vt. 547, 559, 632 A.2d 655, 663 (1993). The federal court assessed defendants' actions in light of this "clearly established" right. We are asked to conduct the same analysis here.

¶ 23. Given our conclusion that the objective reasonableness test is appropriate, we find plaintiffs' attempt to distinguish between "warrantless search" cases and probation cases immaterial. Here, defendants possessed a probation order specifically authorizing searches of Stevens' premises. Thus this case does not turn on whether defendants had "reasonable grounds" to conduct a probation search as in *Lockwood*, 160 Vt. at 558, 632 A.2d at 662, or had reason to believe that a warrantless search was appropriate. The relevant question in both cases is whether, in light of plaintiffs' clearly established right to be free from unreasonable searches and seizures and in light of the information possessed by defendants, it was nonetheless objectively reasonable for defendants to believe that their conduct was lawful. We agree with the trial court that, given the federal court's finding that it was objectively reasonable for defendants to believe that Stevens' probation order was still in effect, "the search did not violate the plaintiffs' clearly-established rights under either constitution."

¶ 24. Given the similarity of the qualified immunity analysis applied by both courts, we turn next to the similarity of the facts. Plaintiffs do not dispute that their complaint in this case, in all material respects, presents the same factual allegations and claims as their complaint in the prior federal action. Nor do they dispute that, based on these facts, the Second Circuit concluded that it was "objectively reasonable" for defendants to believe that the probation order remained in effect on July 11, 1997. Instead, plaintiffs argue that the facts relied on by the federal court are "not material" here. Specifically, they maintain that a factual dispute exists because the evidence "objectively" demonstrates that defendants believed Stevens' probation began April 18, 1996. This, they argue, is "information possessed by the searching officials at the time of the search," and therefore, the federal court had no basis to find an "ambiguity" regarding the dates of Stevens' probation.

¶ 25. Plaintiffs raise a legal, rather than a factual, argument. The federal court considered this same argument and rejected it, finding defendants' subjective beliefs irrelevant. Plaintiffs' assertion that the federal court misinterpreted the evidence or misapplied the federal objective good faith standard has no bearing on the similarity of the facts presented in plaintiffs' federal action and those presented here.

¶ 26. We conclude that the federal court's determination that defendants acted in an objectively reasonable way is entitled to preclusive effect. This issue was litigated and decided in a prior case between the parties that resulted in a final judgment on the merits. The federal court's determination of this issue was necessary to the

resolution of the action; it formed the basis of the court's decision to grant summary judgment to defendants on qualified immunity grounds. Plaintiffs have received a full and fair opportunity to contest this issue, and they are not entitled to relitigate it here. We therefore find defendants entitled to qualified immunity as a matter of law and conclude that the trial court properly granted defendants' motion for summary judgment.

*Affirmed.*