2004 VT 64

**Richard and Daniel SCOTT and Bluffside Farms, Inc. v. CITY OF NEWPORT**

[857 A.2d 317]

No. 02-457

¶ 1. July 29, 2004. Plaintiffs Richard Scott, Daniel Scott, and Bluffside Farms, Inc. (collectively, the Scotts) filed this action against defendant City of Newport, seeking a declaration that they are the owners of a 31-foot strip of land in the City, the traveled portion of which is known as Bigelow's Bluff Road. The court granted summary judgment in favor of the City, ruling that the ownership issue had been conclusively determined against the Scotts in an earlier adjudication in which plaintiffs had challenged a site plan application by their neighbors the Carriers, the trial court had ruled that Bigelow's Bluff Road was

a public street, and this Court had affirmed. See *In re Carrier*, 155 Vt. 152, 157, 582 A.2d 110, 113 (1990). The Scotts contend the court erred in applying the doctrine of collateral estoppel, or issue preclusion. We affirm.

¶ 2. The facts of the Scotts' and Carriers' procedurally complicated four-year litigation are provided in detail in *Carrier*, 155 Vt. at 154-56, 582 A.2d at 111-12. We present here only a summary of events related to the road. After purchasing a 10.5-acre parcel in the City, the Carriers applied for site plan approval of a planned nine-lot residential subdivision. Plaintiffs here (Bluffside Farms, Inc., and its owners the Scotts) opposed the application, and later appealed the planning commission's partial approval of the project to superior court. See 24 V.S.A. §§ 4464, 4471 (giving "interested persons" party status to appeal decision of board of adjustment to superior court) (1994).* A central issue throughout the litigation was whether Bigelow's Bluff Road was a public road and, if so, whether it and the development's interior roads could provide safe vehicular access and circulation into and throughout the subdivision as required by pertinent statutes and town bylaws. See *id.* § 4406(2) (prohibiting land development on lots without either frontage on a public road or waters, or permanent access by an easement of at least twenty feet in width); Newport City Zoning Regulation § 502 (same) (1987); *id.* § 352 (requiring "maximum safety of vehicular circulation between the site and the street network").

¶ 3. Throughout the earlier litigation — which involved two planning commission decisions, two appeals to superior court (including two trials and a partial retrial), and the appeal to this Court — the Scotts argued, as they do now, that they owned Bigelow's Bluff Road by virtue of a 1985 quitclaim deed from Rudolf Bigelow. Therefore, the Scotts contended that the Carriers' development was prohibited under 24 V.S.A. § 4406(2) and City zoning regulations. During the first appeal to superior court, the Carriers crossclaimed against the City, contending that the City had acquired title to the road by dedication and acceptance prior to 1985, and counterclaimed against the Scotts, asserting that the 1985 quitclaim deed was fraudulent and without consideration. The Orleans Superior Court, after a de novo hearing, concluded that Bigelow's Bluff Road was dedicated to and accepted by the City prior to 1985, and was therefore public. The court thus determined that it was unnecessary to reach the Carriers' counterclaim against the Scotts. Regardless of the road's status, because it was too narrow to meet City safety requirements, and for other reasons, the court denied the site plan application and dismissed all claims with prejudice.

¶ 4. After the City denied the Carriers' revised site plan application, the Carriers again appealed to superior court. The Scotts moved to dismiss the appeal, claiming among other things, res judicata regarding the ownership and safety status of Bigelow's Bluff Road. The court rejected the Scotts' motion. After a plenary three-day trial on all site plan issues, the court again concluded that the 31-foot strip of property known as Bigelow's Bluff Road had been a public road since long before 1985. In amended findings issued a few months later, the court specifically found that an earlier Bigelow, Charles F. Bigelow, dedicated the road to the City of Newport in the early 1900s, and that the City accepted it by providing continual maintenance since 1949. Nonetheless, the court found that the road's existing twelve to seventeen foot width

---

* Starting in 1995, appeals of city zoning decisions went to the environmental court. See 1993, No. 232 (Adj. Sess.), § 48.

was insufficient to meet City traffic safety requirements and thus denied the site plan application. After a partial retrial regarding planned reconstruction of the road, the court finally permitted the Carriers' development.

¶ 5. The Scotts then appealed to this Court arguing, inter alia, that the court lacked jurisdiction to determine the status of Bigelow's Bluff Road as a public street, and that necessary parties were absent. We rejected these claims, concluding that the road's status as a public highway was a "threshold requirement for obtaining site plan approval" under the zoning regulation and state law, and that it was "perfectly proper" for the court to address the issue. See *Carrier*, 155 Vt. at 162, 582 A.2d at 116. We also found that "all parties necessary for the court's declaration concerning the road were present." *Id.*

¶ 6. Almost ten years later, the Scotts commenced this declaratory relief action against the City, seeking a determination that they held title to the identical 31-foot strip of land that included Bigelow's Bluff Road. The City moved for summary judgment, asserting that the issue had been conclusively adjudicated against plaintiffs in the *Carrier* action. The Scotts filed a cross-motion for summary judgment. The court ruled in favor of the City and against the Scotts, concluding that the Scotts were precluded under the doctrine of collateral estoppel from relitigating the status of the road. Accordingly, the court entered judgment in favor of the City. This appeal followed.

¶ 7. In their brief, the Scotts state nine separate "arguments" on appeal (labeled "A" through "I"), sixteen "issues" for review, and seven "claims of error." Many of the assertions overlap or represent the same argument differently stated. As consolidated, the Scotts' claims are that the trial court erred in applying the doctrine of collateral estoppel because: (1) neither they or the City were

"parties" to the earlier judgment; (2) the prior decision was not a personal judgment binding against them; (3) it was not a final judgment because the site plan approval eventually expired; (4) the two cases did not involve the same issue; (5) they were not given a full and fair opportunity to litigate ownership of the road in the earlier action; and (6) issue preclusion is inapplicable and unfair since they were unaware that participating in the zoning decision could affect their personal claim to title.

¶ 8. "Collateral estoppel, or issue preclusion, bars the subsequent relitigation of an issue that was actually litigated and decided in a prior case where that issue was necessary to the resolution of the dispute." *Alpine Haven Prop. Owners Ass'n v. Deptula*, 2003 VT 51, ¶ 13, 175 Vt. 559, 830 A.2d 78; see also *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 209-10, 790 A.2d 408, 416 (2001) ("'When an issue of fact . . . is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'") (quoting Restatement (Second) of Judgments § 27 (1982)). Whether issue preclusion applies to a given set of facts is a question of law, which we review de novo. *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 19, 769 A.2d 668, 673 (2001). Application of the doctrine requires that:

"(1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action;

and (5) applying preclusion in the later action is fair."

*Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 461, 752 A.2d 26, 35 (2000) (quoting *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990)). We conclude that the trial court here correctly determined that all of the requirements were satisfied.

¶ 9. Regarding the first element, party status, the Scotts assert that issue preclusion is inappropriate because the City was not a party to the earlier proceeding. As we have abandoned the doctrine of mutuality, however, the City's status as a party in the earlier proceeding was not necessarily required to bind the Scotts in a subsequent litigation against the City, *Alpine Haven*, 2003 VT 51, ¶ 14 (first element of issue preclusion applies to party to be bound by earlier litigation, not party asserting issue preclusion); *Trepanier*, 155 Vt. at 264-65, 583 A.2d at 587 (abandoning doctrine of mutuality). Moreover, although not initially a party, the City was brought into the *Carrier* case by the trial court, and we concluded on appeal that "all parties necessary for the court's declaration concerning the road were present." *Carrier*, 155 Vt. at 162, 582 A.2d at 116.

¶ 10. Additionally, the Scotts argue that their status as "interested persons" in challenging the site plan application, see 24 V.S.A. § 4464 ("interested person" may appeal zoning decisions), is different from that of being a "party" for purposes of issue preclusion. We discern no meaningful difference. Plaintiffs participated in the litigation, had full appeal rights, and actively contested the ownership issue, asserting title to the property in question and opposing the Carriers' claim that the land had been dedicated to, and accepted by, the City. Accordingly, we conclude that the first criterion is met. See Restatement (Second) of Judgments § 34(1) (person "named as a party"

and "subjected to the jurisdiction of the court is a party to the action"); see also *id.* ch. 4, intro. note at 344-45 (binding effect of prior judgment "is shaped by the capacity in which a party participates in the litigation ... and is dependent on his having stood in an adversarial relationship with respect to the matters determined"); cf. *Cent. Vt.*, 172 Vt. at 26 n.3, 769 A.2d at 677-78 n.3 (issue preclusion may be applied against Public Service Board because when determining and addressing issues faced in setting electrical rates, "the Board functions as a party.").

¶ 11. Regarding the second element, the Scotts cite the Restatement (Second) of Judgments § 17 ("[a] valid and final personal judgment is conclusive between the parties" in a subsequent action) for the proposition that issue preclusion requires a "personal judgment" in the earlier proceeding. This provision, however, merely requires that the party to be bound was properly subject to in personam, as opposed to in rem or quasi-inrem, jurisdiction. Compare Restatement (Second) of Judgments §§ 17-29, Topic 2 (res judicata for "Personal Judgments") with *id.* §§ 30-32, Topic 3 (res judicata for "Judgments Based on Jurisdiction Over Things or Over Status"); see also *id.* §§ 1, 5 (jurisdictional requirements necessary for prior judgment to have binding effect). The Scotts, who joined the prior litigation of their own accord, were plainly subject to in personam jurisdiction in that case.

¶ 12. The Scotts also suggest that the *Carrier* decision is not a "final judgment" and is not binding because it is no longer in effect; i.e., because the decision resulted in granting a site plan permit which was never used and has since expired. The Scotts cite no persuasive authority for this argument, which we find to be without merit. The finality requirement in issue preclusion refers to judgments which are conclusive as op-

posed to "merely tentative in the ... action in which it was rendered." Restatement (Second) of Judgments § 13, cmt. a; see also *id.* § 13, cmt. g ("The test of finality ... is whether the conclusion in question is procedurally definite ...."). The *Carrier* decision represented a final and binding judgment, regardless of whether the project was undertaken. The Scotts also appear to contend the trial court in the *Carrier* decision lacked authority to determine that Bigelow's Bluff Road was a public street. That contention was conclusively rejected by this Court on appeal. See *Carrier*, 155 Vt. at 161-62, 582 A.2d at 115-16. Accordingly, the final judgment requirement is satisfied.

¶ 13. Regarding the third element of issue preclusion, the Scotts argue that the issue litigated in the prior case was different because in *Carrier* the question of road ownership was raised as part of an administrative permit application, whereas here it arises in an action to quiet title in civil court. This argument seems to confuse issue preclusion with the separate doctrine of claim preclusion. For issue preclusion, identity of subject matter or causes of action is not required. See *Cent. Vt.*, 172 Vt. at 20, 769 A.2d at 673. Thus, the fact that these cases arose in different contexts, or that in *Carrier* both the trial court and this Court stopped short of declaring title to Bigelow's Bluff Road as is requested here, is of no matter. See *Carrier*, 155 Vt. at 162, 582 A.2d at 116 ("The [trial] court did not order condemnation of any property; it merely declared Bigelow's Bluff Road to be a public road [for the purpose of] obtaining site plan approval."). The requirement is that the *issue* be the same in the two actions. Here, we have no trouble in concluding that the declaratory ruling we affirmed in *Carrier* — that Bigelow's Bluff Road was a public road prior to 1985, *id.* at 162, 582 A.2d at 115-16 — is exactly the same issue which the

Scotts seek to relitigate and reverse in this action.

¶ 14. In a related vein, the Scotts also claim that the trial court judgment in *Carrier* is unworthy of preclusive effect because the court was sitting as if it were the City planning commission, an administrative tribunal. While we have often observed that the trial court's reach in zoning appeals is as broad as the municipal agency's, and no broader, see *In re Torres*, 154 Vt. 233, 235, 575 A.2d 193, 195 (1990), its decision on de novo review is a judgment of a *court* and no less entitled to preclusive effect in later proceedings.

¶ 15. Regarding the last two elements of issue preclusion, the Scotts assert, in a variety of guises, that they lacked a full and fair opportunity to litigate the issue in the earlier proceeding and that application of the doctrine of issue preclusion would be unfair and a denial of due process. "In deciding whether issue preclusion is appropriate, we balance our desire not to deprive a litigant of an adequate day in court against a desire to prevent repetitious litigation of what is essentially the same dispute." *Stevens v. Stearns*, 2003 VT 74, ¶ 13, 175 Vt. 428, 833 A.2d 835 (internal quotations and citations omitted). No one test is decisive in determining whether the final two criteria for issue preclusion are present; the courts must look to the circumstances of each case. See, e.g., *Trepanier*, 155 Vt. at 265, 583 A.2d at 587 (listing as appropriate factors under the final two criteria, choice of forum, incentive to litigate, foreseeability of future litigation, legal standards and burdens employed in each action and procedural opportunities available in each forum); *Alpine Haven*, 2003 VT 51, ¶ 15 (considering whether there is a substantial overlap in the evidence and argument between the two proceedings, whether pretrial preparation and discovery in the first case covers the issues in the second proceed-

ing, and how closely the claims in the two proceedings are related).

¶ 16. Here, all of the relevant considerations indicate that the Scotts already had their day in court. The two proceedings occurred in the same superior court and, as regards this issue, followed the same rules of procedure, discovery, and evidence, applied the same rule of law and standards of proof, and included full right to review on appeal. Although the Scotts claim that as "interested persons" under 24 V.S.A. § 4406 they represented a legal interest other than their own, they lacked an incentive to litigate, and they were unaware of the consequences of the *Carrier* ruling, the record does not support these claims. As the trial court found:

> [Plaintiffs] fully and actively participated in every aspect and proceeding of the site plan litigation, especially those parts . . . devoted to the Bigelow Bluff Road issues. Plaintiffs were represented by competent, experienced counsel . . . . They introduced evidence, their own witnesses, and cross-examined opposing witnesses. Moreover, Plaintiffs had every incentive to contest the determination that Bigelow Bluff road was a public way. All involved recognized that a contrary decision — in Plaintiffs' favor, that it was a private road subject only to certain easements for the benefit of adjoining landowners, which is exactly the declaration Plaintiffs seek here — would be the death knell to Carrier's subdivision proposal, and stopping the development was the Plaintiffs' ultimate objective which they pursued with unflagging tenacity. This Court can see no policy rationale which would substan-

tially support the conclusion that, almost 15 years later, the Scotts and Bluffside Farms should be allowed yet . another opportunity to contest ownership of Bigelow Bluff Road. Indeed, the fundamental policies which underlie the doctrines of res judicata and collateral estoppel — finality, repose and predictability — all strongly counsel to the contrary.

¶ 17. The record, and the law, amply support the court's findings and conclusion. Accordingly, we discern no basis to disturb the judgment.

*Affirmed.*