# Berlin Convalescent Center, Inc. and American Health Care, Inc. v. Kent Stoneman, Director, Division of Rate Setting, et al.

[615 A.2d 141]

No. 91-127

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed June 19, 1992

Motion for Reargument Denied July 27, 1992

*Martin K. Miller* and *Patricia L. Rickard* of *Miller, Eggleston & Rosenberg, Ltd.*, Burlington, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Marjorie Power*, Special Assistant Attorney General, Waterbury, for Defendants-Appellees.

**Dooley, J.** This case involves a dispute over nursing home rates. Plaintiffs, Berlin Convalescent Center, Inc., and American Health Care, Inc., both owners and operators of nursing homes, appealed to superior court a rate decision made by defendants, agencies and officials of the State of Vermont. The court granted defendants' summary judgment motion because it concluded that earlier decisions in the ongoing rate dispute between plaintiffs and defendants constituted a res judicata bar to plaintiffs' claims. On appeal, plaintiffs argue that res judicata does not apply and that summary judgment was improper. We affirm.

A history of the events in this proceeding is necessary. In June of 1987, defendants determined that daily rates payable to nursing homes for care of Medicaid patients would increase by 2.6% for fiscal year 1988 (July 1, 1987 through June 30, 1988) over those payable in the prior year. Alleging that the increase was insufficient to meet legal requirements, plaintiffs appealed the decision to the Washington Superior Court pursuant to 33 V.S.A. § 195(a)(2), now recodified as 33 V.S.A. § 909(a)(2). They claimed that the rates were inadequate to cover the costs that had to be incurred by a nursing home operated in accordance with regulatory standards.

After a hearing on the merits, the superior court issued a decision on May 5, 1989 agreeing with plaintiffs in part (the merits decision). In reaching its decision, the court concluded that the appropriate standard of review required it to rely primarily on the record made in the administrative agency and that it would not overturn the administrative decision absent a finding of abuse of discretion. Nevertheless, the court found that the rate increase was legally inadequate for five reasons:

1. The increase was based on national data about the cost of running an efficient and economical nursing home, and thus failed to accurately reflect Vermont's particular economic conditions.

2. After the prospective inflation rate was selected, it was reduced because rates selected in the past proved to be too high. There was no economic basis for that decision.

3. The error itemized in 2. above was magnified by the use of a "half year inflation factor."

4. The rate was improperly reduced to offset a separate increase in Medicaid rates for nursing homes voted by the Legislature to take effect January 1, 1988.

5. The base rate did not adequately account for increased staffing requirements resulting from new health and safety standards.

Based on these deficiencies, the court found defendants' action to be unreasonable, clearly erroneous and an abuse of discretion. It reversed and remanded the rate "for recalculation as to these petitioners." Neither party appealed the merits decision.[1]

In August of 1989, plaintiffs moved for enforcement of the superior court's merits decision and for contempt, alleging that defendants had failed to recalculate the rate increase. On October 24, 1989, defendants filed a revised rate decision establishing a 3.9% increase for FY 1988. On November 22, 1989, plaintiffs filed a separate appeal of those rates. On January 10, 1990, they renewed their motion for enforcement and contempt, alleging that the new rates failed to comply with the merits decision. On March 28, 1990, the superior court took up plaintiffs' motions for enforcement and contempt. The record for that hearing consisted of communications between plaintiffs and defendants in the recalculation process and two affidavits submitted by defendants to describe how the recalculation was accomplished. Based on that record, the court concluded that defendants had cured each of the five deficiencies found in the merits decision and that the new rate increase decision complied with the merits order, assuming that defendants did what the affidavits indicated they had done (the enforcement decision). Because plaintiffs alleged that defendants did not use the methods they claimed, the court gave plaintiffs an opportunity to show evidence of this, emphasizing that, "they must substantiate their allegations with evidence of non-compliance in the method of recalculation and not just attempt to re-try the case because they are disappointed that the recalculated inflation factor does not equal 7.8 percent [the amount they sought]."

In response to the enforcement decision, plaintiffs filed an affidavit of the president of the plaintiff corporations, stating

---

[1] Defendants attempted to appeal the merits decision, but their appeal was dismissed by this Court because notice of appeal was untimely.

that the actual costs of operation of their nursing homes was about seven dollars per patient per day higher than the recalculated reimbursement rate. Plaintiffs also filed an affidavit of their accountant, stating that the Director of the Vermont Division of Rate Setting had told him that the Director would be retired by the time the rates were finally set. After evaluating these affidavits, the court denied the motion to enforce and for contempt, concluding that plaintiffs were again arguing only that they did not obtain the rates they wanted and were "attempting to retry the entire case on the merits" (the supplemental enforcement decision). Neither party appealed the enforcement decisions.

The action then shifted to the independent appeal of the rate decision filed by plaintiffs in November of 1989. Defendants moved for summary judgment, claiming that all issues had been resolved in the earlier enforcement action. The court agreed and dismissed the appeal (the summary judgment decision). Plaintiffs appeal from this decision.

 The doctrine of res judicata, also known as claim preclusion, bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the "parties, subject matter and causes of action are identical or substantially identical." *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984). It bars not only issues actually litigated but also those which "should have been raised in previous litigation." *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 370, 566 A.2d 1323, 1328 (1989). Similar in effect, although more narrow in scope, is the doctrine of collateral estoppel or issue preclusion. It bars "the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." *Id.* at 369, 566 A.2d at 1327. The elements of issue preclusion have recently been itemized in *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990):

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was

a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair. We also set forth a nonexclusive list of factors bearing on whether the last two elements are present. Both claim and issue preclusion protect the courts and the parties against the burden of relitigation, encourage reliance on judicial decisions, prevent vexatious litigation and decrease the chances of inconsistent adjudication. See *id.*; *Fitzgerald v. Fitzgerald*, 144 Vt. 549, 552, 481 A.2d 1044, 1046 (1984).

Although the summary judgment decision of the trial court was phrased in terms of res judicata, it was actually an issue-preclusion decision, focusing on what was actually litigated in the prior proceeding. The court held that plaintiffs are barred from relitigating the applicable standard of review and whether, under that standard of review, defendants acted in accordance with law in setting the fiscal year 1988 rates. Having decided those issues in favor of defendants, the court concluded that plaintiffs could not prevail on the merits of the appeal and granted summary judgment. Plaintiffs argue that the issues in the earlier decision were different and narrower so that their resolution does not preclude plaintiffs from obtaining a de novo review of the new rate decision, and, in any event, there are disputed issues of fact that make summary judgment inappropriate. We start by examining the issues that the court found plaintiffs were precluded from relitigating.

■ The first issue is the standard of review. A party aggrieved by a final order of the Division of Rate Setting of the Vermont Agency of Human Services has a right "to appeal de novo to the superior court" where the nursing home facility is located. 33 V.S.A. § 909(a)(2). In the merits decision, the superior court analyzed the wording of the statute in light of this Court's decision in *Chioffi v. Winooski Zoning Board*, 151 Vt. 9, 11 n.2, 556 A.2d 103, 105 n.2 (1989), which noted a distinction between "de novo review" and "trial de novo," and concluded that, despite the use of the words "de novo," the statute did not call for "a retrial or . . . extensive judicial record making." It went on to conclude that the Division's rate decision was discretionary and could be overturned only by a showing of abuse of discretion that resulted in prejudice to the appealing party.

Necessarily, the standard of review determination meant that the court analyzed the rate decision solely on the record made in the Division. Because of the standard of review it adopted, when the court found the rate decision erroneous, it remanded to the Division rather than establishing the rate itself.

While we do not have before us the full record of the earlier proceeding, it is clear that the court's standard of review decision differed from plaintiffs' position. The most important effect of the decision was to make irrelevant plaintiffs' evidence about their costs of running nursing homes, as well as the evidence of the costs borne by other operators, to the extent that this evidence was not before the Division of Rate Setting. One of plaintiffs' arguments to this Court is that the summary judgment decision they have appealed is flawed because it denies them a trial "de novo" of the recalculated rates in order to show that they will not cover plaintiffs' reasonable expenses. That "flaw" is the result of the standard of review determined in the merits decision. Although plaintiffs attack the standard of review determination, they offer no reason why they are not bound by that determination as a matter of issue preclusion. The standard of review decision was "necessary to the resolution of the [earlier] action," *American Trucking Ass'ns v. Conway*, 152 Vt. at 370, 566 A.2d at 1327, and plaintiffs had a full and fair opportunity to litigate the standard of review in that action. The issue is identical in this proceeding. Thus, we agree with the trial court that the earlier standard of review decision controls.[2]

■ The second issue is the review decision on the merits. The superior court first "reversed and remanded" the rate decision "for recalculation as to these petitioners." Plaintiffs brought the recalculated decision back to the superior court on a motion for enforcement of the earlier order and contempt. The court found that defendants "made a good faith effort to comply with the mandates" of the earlier decision and their "interpretation of the directives in that order is correct." It gave plaintiffs an opportunity "to prove that the Division did not comply with the specific requirements contained in the order."

---

[2] We expressly do not reach whether the standard of review decision correctly interpreted the statute.

The court reviewed plaintiffs' offer of proof, which again went to their operating costs, and concluded that plaintiffs were arguing noncompliance based solely on their position that they did not get the rate increase they desired and that they were "merely attempting to retry the entire case on the merits." It made final its decision denying the motion to enforce and for contempt.

The question of the preclusive effect of the merits and enforcement decisions is at the heart of plaintiffs' appeal to this Court. They argue that these decisions have no preclusive effect because plaintiffs prevailed in the merits decision and the enforcement decisions went solely to whether defendants were in contempt. In plaintiffs' view, none of these decisions involved the issue before the court in this proceeding, that is, whether the recalculated 3.9% rate increase complied with defendants' responsibilities under state and federal law.

The question turns on what was actually litigated in the first proceeding. When plaintiffs first moved for enforcement and contempt, their complaint was that defendants had failed to recalculate the rates. They persisted in their motions after defendants recalculated the rates, however, and thus drew into question the lawfulness of the recalculation. They continued to move not only for contempt but also for enforcement of the original order.

Plaintiffs emphasize the wording of the enforcement decision to the effect that defendants "made a good faith effort to comply." From this wording they argue that the court determined solely whether defendants' acts were contemptuous and not whether the rate recalculation complied with the law. Taken out of context, that phrase supports plaintiffs' position. However, the court analyzed each of the deficiencies found in the earlier rate decision and found each had been corrected. Thus, it analyzed in depth the merits of defendants' actions in recalculating the rates. More important, it conducted this analysis according to a standard of review that was deferential and would uphold the recalculation absent an abuse of discretion. We conclude that the language plaintiffs rely on is a restatement of the deference the court accorded defendants' actions rather than a narrowing of the inquiry to contemptuous behavior. In effect, the court concluded that the Division acted within

its discretion in setting the rate increase at 3.9%. We can place no other interpretation on the enforcement and supplemental enforcement decisions. Thus, the issue decided and the issue before the court in this case were identical.

In deciding upon the application of issue preclusion, we balance our "desire not to deprive a litigant of an adequate day in court" against "a desire to prevent repetitious litigation of what is essentially the same dispute." Restatement (Second) of Judgments § 27 comment c (1982); see also *Alpstetten Ass'n v. Kelly*, 137 Vt. 508, 513, 408 A.2d 644, 647 (1979) (purpose of collateral estoppel is to eliminate "repetitive or piecemeal litigation"). The comment to § 27 of the Restatement suggests we look at a number of questions in determining whether "essentially the same dispute" is involved: (1) Is there "a substantial overlap" in the evidence and argument between the two proceedings?; (2) Is the "same rule of law" involved in both proceedings?; (3) Does the "pretrial preparation and discovery" in the first proceeding cover the issues in the second proceeding; and (4) "How closely related are the claims involved in the two proceedings?" The answers to these questions make inescapable the conclusion that this litigation involves "essentially the same dispute" as the enforcement motion plaintiffs brought in the earlier litigation. We need not determine whether the court applied an improper standard of review in the earlier litigation. Plaintiffs failed to timely appeal that issue when it was decided, instead resting on the court's favorable decisions with respect to the error it found had been made by the Division.

Nor can we conclude that plaintiffs did not have a full and fair opportunity to litigate the issues they raise here or that applying issue preclusion would otherwise be unfair. Plaintiffs opened the merits of the recalculation decision when they pressed forward with their enforcement motion after defendants recalculated the rate increase. The court held the record open to allow plaintiffs to bring forward evidence that defendants had abused their discretion in the recalculation. Although it was entirely foreseeable that the court and defendants would view the enforcement decisions as the end of the litigation over the FY 1988 rates, plaintiffs failed to appeal those decisions. See *Trepanier*, 155 Vt. at 265, 583 A.2d at 587.

Finally, we reach plaintiffs' argument that the issues precluded did not warrant entry of summary judgment for defend-

ants. Once we conclude that the earlier litigation determined that defendants' rate decision would be overturned only for abuse of discretion and it fell within their discretion, there are no issues left to litigate in this appeal from the rate decision. The matter was ripe for summary judgment because there are no disputed issues of material fact and defendants must prevail on the law. See V.R.C.P. 56(c); *State v. Delaney*, 157 Vt. 247, 252, 598 A.2d 138, 141 (1991). As in the earlier case, the additional facts plaintiffs want to show were not before the Division in setting the rates and are therefore irrelevant in light of the standard of review utilized by the trial court.

*Affirmed.*