[802 NE2d 1071, 770 NYS2d 673]

Maureen O'Connell, Respondent, v Ellen Corcoran, as Executrix of John J. O'Connell, Deceased, Appellant.

Argued September 11, 2003; decided November 20, 2003

## POINTS OF COUNSEL

*Matthew J. Clyne,* Albany, for appellant. I. The instant action is barred by principles of res judicata and collateral estoppel. (*O'Connell v O'Connell,* 226 AD2d 950; *Matter of Reilly v Reid,* 45 NY2d 24; *O'Brien v City of Syracuse,* 54 NY2d 353; *Brooklyn Welding Corp. v City of New York,* 198 AD2d 189; *Boronow v Boronow,* 71 NY2d 284; *Viviano v Allard,* 197 AD2d 210; *Nikrooz v Nikrooz,* 167 AD2d 334; *Miller v Miller,* 183 AD2d 395; *Mahoney v Mahoney,* 131 AD2d 822.) II. The court below applied an erroneous valuation date to the marital assets. (*Anglin v Anglin,* 80 NY2d 553; *Majauskas v Majauskas,* 61 NY2d 481.) III. Defendant's decedent was not properly credited with his individual contributions toward the marital residence. (*Heine v Heine,* 176 AD2d 77; *Cleary v Cleary,* 171 AD2d 1076.) IV. The courts below erroneously failed to balance the equities by failing to adequately consider the length of the parties' separation. (*Michalek v Michalek,* 114 AD2d 655.) V. Defendant's decedent's monthly disability payment from INA Life Insurance Company of New York is not subject to equitable distribution since it reflects compensation for personal injury. (*Dolan v Dolan,* 78 NY2d 463; *Amara v Amara,* 243 AD2d 433.)

*Friedman and Molinsek, P.C.,* Delmar (*Michael P. Friedman* of counsel), for respondent. I. Plaintiff-respondent's claim is not barred by res judicata. (*Nikrooz v Nikrooz,* 167 AD2d 334; *Braunstein v Braunstein,* 114 AD2d 46; *Mahoney v Mahoney,* 131 AD2d 822; *Erhart v Erhart,* 226 AD2d 26.) II. The court appropriately set forth the factors it considered in reaching its de-

termination. (*Monette v Monette,* 177 AD2d 802; *Du Jack v Du Jack,* 221 AD2d 712.) III. Supreme Court appropriately utilized the commencement of the action as the cutoff date for equitable distribution of plaintiff's pension. (*Anglin v Anglin,* 80 NY2d 553; *McMahon v McMahon,* 187 Misc 2d 364; *Sullivan v Sullivan,* 201 AD2d 417; *Matter of Nicit v Nicit,* 217 AD2d 1006, 86 NY2d 883.) IV. The court appropriately distributed the marital property in spite of the length of the parties' separation given the fact of the circumstances of the parties' marriage. (*Bisca v Bisca,* 108 AD2d 773, 66 NY2d 741; *Rizzuto v Rizzuto,* 250 AD2d 829; *Price v Price,* 69 NY2d 8; *Burns v Burns,* 84 NY2d 369; *Judson v Judson,* 255 AD2d 656; *Walasek v Walasek,* 243 AD2d 851; *Seidman v Seidman,* 226 AD2d 1011.) V. The court correctly determined that defendant's decedent's disability payment is marital property subject to equitable distribution. (*Dolan v Dolan,* 78 NY2d 463; *Allwell v Allwell,* 277 AD2d 789; *Palazzolo v Palazzolo,* 242 AD2d 688; *Carney v Carney,* 236 AD2d 574; *Parrish v Parrish,* 213 AD2d 928; *Ferrugiari v Ferrugiari,* 226 AD2d 498.)

## OPINION OF THE COURT

CIPARICK, J.

In 1959, plaintiff Maureen O'Connell and now-deceased John J. O'Connell were married in New York.[1] Eight children were born of the marriage, all currently emancipated. In 1982, plaintiff moved out of the marital residence and commenced a New York divorce action based on cruel and inhuman treatment. After trial, Supreme Court dismissed the action for failure of proof and the Appellate Division affirmed (116 AD2d 823 [3d Dept 1986]). Thereafter, plaintiff and decedent continued to reside separately. The children lived with plaintiff, and decedent paid child support.

In 1993, plaintiff established residence in Vermont. Thereafter, in 1994, she commenced a divorce action in the Family Court of Vermont pursuant to Vermont's no-fault divorce law, which permits divorce when "a married person has lived apart from his or her spouse for six consecutive months and the court finds that the resumption of marital relations is not reasonably probable" (Vt Stat Ann, tit 15, § 551 [7]). Decedent was served with a complaint seeking divorce, and by letter answer opposed the

---

1. During the pendency of his motion for leave to appeal to this Court, John O'Connell died. Ellen Corcoran, as executrix of his estate, was substituted as the party defendant in this action.

divorce. A final hearing was scheduled for December 21, 1994. Decedent received notice from the Vermont court, requesting that he appear at the hearing on the divorce and motion for property division. Decedent appeared pro se, although New York counsel accompanied him and was available in the courtroom.

During the hearing, plaintiff's counsel informed the Vermont court that plaintiff was seeking only a divorce. When the court inquired about property division, counsel explained that all of the parties' marital assets were located in New York State and the Vermont court lacked jurisdiction to distribute the property. Neither the trial judge nor decedent contested plaintiff's statement. Decedent argued only that plaintiff's previous divorce action in New York barred her from maintaining a divorce action in Vermont. At the close of the hearing, the court rejected decedent's argument and granted plaintiff a final judgment of divorce. It made no property distribution.

In 1995, plaintiff commenced this New York action against decedent seeking equitable distribution of the marital property, pursuant to Domestic Relations Law § 236 (B) (5) (a), which authorizes New York courts to distribute marital property subsequent to a foreign judgment of divorce. Decedent moved for dismissal on the ground that the complaint was barred by res judicata. He argued that, because Vermont Family Court had personal jurisdiction over both parties, the court could have rendered a judgment directing equitable distribution of their marital assets. He contended that plaintiff's failure to seek equitable distribution in the Vermont divorce action barred her from seeking subsequent equitable distribution in Vermont and, therefore, under the Full Faith and Credit Clause of the United States Constitution, New York was required to dismiss plaintiff's complaint.

Supreme Court denied decedent's motion and the Appellate Division affirmed (226 AD2d 950 [3d Dept 1996], *lv dismissed* 88 NY2d 963 [1996]). Noting that Domestic Relations Law § 236 (B) (5) (a) expressly permits parties to obtain equitable distribution following a foreign judgment of divorce, the Appellate Division concluded that the statute entitled plaintiff to proceed in this action. Additionally, the Court concluded that the Vermont divorce decree did not have res judicata effect in New York because the issue of equitable distribution was not resolved, addressed or litigated in the Vermont divorce proceeding, and it remitted the matter to Supreme Court for trial.

Following a bench trial, Supreme Court awarded plaintiff a distributive award of $186,670, representing approximately half of the marital estate, and directed decedent to pay $5,000 toward plaintiff's counsel fees. The Appellate Division affirmed (290 AD2d 774 [3d Dept 2002]) and this Court granted defendant leave to appeal, bringing up for review the prior Appellate Division order that denied defendant's motion to dismiss the complaint. We now reverse.

Domestic Relations Law § 236 permits a New York proceeding to obtain the distribution of marital property following a foreign judgment of divorce.[2] Lower courts differ as to whether a bilateral sister state divorce decree—one in which the sister state could have, but did not, distribute marital property—precludes a subsequent New York proceeding to obtain equitable distribution pursuant to section 236 (B) (2) and (5) (a) (*compare* 226 AD2d 950 [3d Dept 1996], *lv dismissed* 88 NY2d 963 [1996], *with Erhart v Erhart*, 226 AD2d 26 [4th Dept 1996]; *see also* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:3, at 247-248). *Erhart* held that the Full Faith and Credit Clause requires the courts of this state to give the same effect to a properly obtained sister state divorce decree that the sister state would give the decree. Therefore, where a divorced spouse would be precluded from commencing a separate action for distribution of marital property within the sister state granting the divorce decree, New York must also preclude a subsequent action for equitable distribution of marital property (*see Erhart*, 226 AD2d at 31). This approach is consistent with the requirements of full faith and credit and our own application of res judicata in matrimonial actions.

While section 236 (B) (2) and (5) (a) are broadly worded to permit parties to obtain postdivorce equitable distribution fol-

---

**2.** Section 236 (B) provides in relevant part:
"2. Matrimonial actions. Except as provided in subdivision five of this part, the provisions of this part shall be applicable to . . . proceedings to obtain maintenance or a distribution of marital property following a foreign judgment of divorce, commenced on and after the effective date of this part [July 19, 1980]. . . .
"5. Disposition of property in certain matrimonial actions. a. Except where the parties have provided in an agreement for the disposition of their property . . . the court, . . . in proceedings to obtain a distribution of marital property following a foreign judgment of divorce, shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment."

lowing a foreign divorce—with no mention of whether such a divorce results from either an ex parte or bilateral divorce proceeding—the statute should be interpreted to extend only as far as the Constitution permits. In accordance with the Full Faith and Credit Clause, a "judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced" (*Underwriters Natl. Assur. Co. v North Carolina Life & Acc. & Health Ins. Guar. Assn.*, 455 US 691, 704 [1982], quoting *Hampton v McConnel*, 3 Wheat [16 US] 234, 235 [1818]; *see also Vanderbilt v Vanderbilt*, 354 US 416, 418 [1957]; *Matter of Luna v Dobson*, 97 NY2d 178, 183 [2001]). Thus, where a foreign divorce decree would serve as a bar to a subsequent action for equitable distribution brought in the courts of the decree-rendering state, the decree also has that effect in New York.

Giving a foreign divorce decree the same conclusive effect in New York as it would have in the decree-rendering state is consistent with our own application of res judicata in matrimonial actions (*see Boronow v Boronow*, 71 NY2d 284 [1988]). The decree-rendering state here being Vermont, we now turn to a review of its law.

Vermont Statutes Annotated, title 15, § 751 (a) provides that,

> "[u]pon motion of either party to a [divorce] proceeding . . . the court shall settle the rights of the parties to their property, by including in its judgment provisions which equitably divide and assign the property. *All property owned* by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court" (emphasis supplied).

Here, despite the erroneous statement of plaintiff's Vermont counsel, there is no question that the Vermont court had personal jurisdiction over both plaintiff and decedent and could have distributed the marital property, wherever situated. We reject plaintiff's contention and the dissent's conclusion that decedent's appearance was limited only to contesting the divorce and that the Vermont court had rendered itself powerless to decide the property issue (*see* dissenting op at 190).

In Vermont, as in New York, the common-law doctrine of res judicata "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties,

subject matter and causes of action are identical or substantially identical' " (*Berlin Convalescent Ctr., Inc. v Stoneman*, 159 Vt 53, 56, 615 A2d 141, 143 [1992]). This "doctrine covers claims that were actually litigated, as well as those which could have been litigated" in a previous action (*Roddy v Roddy*, 168 Vt 343, 347 n 2, 721 A2d 124, 127 n 2 [1998]).

Applying the principles of full faith and credit, plaintiff's divorce action has the same conclusive effect in New York as it does in Vermont. We, therefore, hold that, notwithstanding Domestic Relations Law § 236 (B) (2) and (5) (a), this action is barred in New York. Public policy in New York and Vermont frowns upon forum shopping and the bifurcation of divorce and equitable distribution proceedings. In *Boronow*, this Court held that a party in a divorce action, who had a full and fair opportunity to contest title to the former marital home, was barred from raising the issue of title in a subsequent action (*see* 71 NY2d at 286). Applying a transactional analysis, we explained that, in a divorce action,

> "questions pertaining to important ancillary issues like title to marital property are certainly intertwined and constitute issues which generally can be fairly and efficiently resolved with the core issue. The courts and the parties should ordinarily be able to plan for the resolution of all issues relating to the marriage relationship in the single action" (*id.* at 290).

The Vermont Supreme Court similarly has recognized a preference for a single action. As the court noted in *Roddy v Roddy*, "[n]o one is entitled to break a case down into a myriad of single issue actions to obtain the desired judgment. Judicial time schedules and fairness to one's opponent prohibit this practice" (*Roddy*, 168 Vt at 347, 721 A2d at 127, quoting *B & E Corp. v Bessery*, 130 Vt 597, 601, 298 A2d 544, 546 [1972]).[3] Thus, a party—who had a full and fair opportunity to litigate property issues in another state—would be precluded from litigating such issues in New York.

Finally, we do not agree with the dissent that the Vermont court "expressly declined to adjudicate the issue of equitable

---

**3.** The dissent's reliance on *Ford v Franklin* (129 Vt 114, 118, 274 A2d 461, 463 [1971]) is misplaced as the plaintiff in that case had obtained an ex parte Nevada divorce decree, defendant having defaulted and "being neither present in person nor by attorney." (*Id.*)

distribution" (dissenting op at 186). There is no language sever- ing issues of property distribution, and nothing in the court's order to indicate an intention to do so. The dissent rests entirely on a colloquy with counsel (quoted at 187-188), when counsel erroneously advised that the court lacked jurisdiction to divide New York assets. The court responded "All right. Mr. O'Connell, is there anything that you wish to put to the Court at this time?" This in no way constitutes a severance. Indeed, in a 12- page transcript of the Vermont hearing, the court used the words "All right" eight times, clearly as a means of moving the parties along.

Nor can we, as a court of law, agree with the dissent's closing observation that, if equitable distribution is denied, plaintiff will receive nothing from a long term marriage. In fact, we do not know the true equities here, and must be guided by the law and the parties' arguments to us.[4]

Having determined that plaintiff's action for equitable distri- bution is barred, we need not address defendant's remaining contentions as they are academic.

Accordingly, the order of the Appellate Division should be re- versed, the motion granted and the complaint dismissed with costs.

G.B. Smith, J. (dissenting). Because the Vermont court expressly declined to adjudicate the issue of equitable distribu- tion, I would affirm the order of the Appellate Division.

Plaintiff Maureen O'Connell and defendant John J. O'Connell were married in 1959. She was a nurse and he was, as he described, a laborer at a beer brewing company. When the company closed in the early 1960s, defendant was vice-president of the company. Defendant then went to work for an energy company where he remained until his retirement in 1994.[1] Plaintiff, by contrast, became a homemaker about a year after the marriage, raising the first of eight children. All the children were raised in a two-story five-bedroom colonial home con- structed in 1968 and 1969. While defendant was primarily responsible for building the home, plaintiff maintained it. Plaintiff's parents financed significant improvement of the home's garage.

---

**4.** It bears noting that the dissent is predicated on an argument that is not being asserted by plaintiff.

**1.** Defendant died recently and the preliminary executrix proceeded with this action.

In 1982, the two separated. By then plaintiff had resumed her vocation as a nurse. Plaintiff moved to another home with all the children except for one who was away in school. Plaintiff's action for divorce that same year, based on cruel and inhuman treatment, was unsuccessful (*O'Connell v O'Connell*, 116 AD2d 823 [1986]). When plaintiff left with the children, she essentially took no marital property with her.

About a decade later, in December 1994, plaintiff succeeded in obtaining a divorce in Vermont where she was not required to establish that defendant was at fault. It was enough that they had been living apart for more than six months and reconciliation was unlikely. The defendant appeared at the court in Vermont to contest the divorce proceeding. The Vermont court would not allow his attorney, who was not admitted in Vermont, to participate in the proceeding. Defendant proceeded pro se and protested the proceeding only on the grounds of the prior New York divorce. The Vermont court stated that it would take defendant's opposition to be an objection to the jurisdiction of the court, and it denied defendant's assertion that the New York proceeding was determinative.

During the divorce proceeding in Vermont, the following discussion took place between plaintiff's counsel and the court after plaintiff testified:

> "COURT: . . . am I to understand then, that questions of property division are conceded by you as to not appropriately being before this court?
>
> "[COUNSEL]: As far as I understand all of the property—
>
> "COURT: You're only asking at this point for a decree of divorce—
>
> "[COUNSEL]: Correct.
>
> "COURT:—nothing ancillary to that?
>
> "[COUNSEL]: That's it. Correct.
>
> "COURT: And will you explain to the court why that is?
>
> "[COUNSEL]: Because as far as I know if any marital property exists, it exists in the State of New York and I don't believe this court would have jurisdic-

tion to make orders with regard to the division of marital property assets in the State of New York.

"COURT: All right."

Plaintiff then commenced this action in New York Supreme Court seeking equitable distribution. Plaintiff relied on New York Domestic Relations Law § 236, which provides, as relevant, that "in proceedings to obtain a distribution of marital property following a foreign judgment of divorce," the court "shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment." (§ 236 [B] [5] [a].) Defendant moved to dismiss the action on the ground of res judicata and collateral estoppel. The trial court denied the motion and the Appellate Division affirmed, concluding, that in the Vermont action, "[n]o provision . . . was made for the distribution of marital property nor was the issue litigated or alluded to in any way" (226 AD2d 950, 951 [1996]). This Court dismissed the defendant's motion for leave to appeal (88 NY2d 963 [1996]).

Thereafter, the court awarded plaintiff approximately one half of the marital estate, including a share of the marital residence, defendant's pension benefits, and various money accounts. The Appellate Division once again affirmed (290 AD2d 774 [2002]). The Appellate Division noted that the parties were both 62 years old at the time of the trial and that "defendant challenged and successfully defeated the 1982 divorce action, and subsequently failed to demonstrate any unfairness in permitting plaintiff to share in property acquired in the ensuing years" (290 AD2d at 777). This appeal ensued.

By specifically granting courts the authority to make equitable distribution awards "following a foreign judgment of divorce," section 236 contemplates that a party can obtain a divorce in one state while having property equitably distributed in New York. Nevertheless, section 236 is subject to article IV, § 1 of the United States Constitution, which provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State" (*see generally Matter of Luna v Dobson*, 97 NY2d 178, 182-183 [2001]).

Although defendant references res judicata and collateral estoppel, collateral estoppel or issue preclusion is not applicable in this case because only the issue of divorce was resolved by a final judgment on the merits (*see Farrell v Mountain Folk, Inc.*, 169 Vt 568, 568-569, 730 A2d 597, 598 [1999]). The Vermont

court did not resolve the issue of equitable distribution. There is no doubt that the Vermont court could have resolved that issue. Vermont Statutes Annotated, title 15, § 751 (a) reads in part, "Upon motion of either party to a proceeding under this chapter, the court shall settle the rights of the parties to their property, by including in its judgment provisions which equitably divide and assign the property."

The doctrine of res judicata, as articulated by the Vermont Supreme Court, "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties, subject matter and causes of action are identical or substantially identical'" (*Berlin Convalescent Ctr., Inc. v Stoneman*, 159 Vt 53, 56, 615 A2d 141, 143 [1992], quoting *Berisha v Hardy*, 144 Vt 136, 138, 474 A2d 90, 91 [1984]). Unlike issue preclusion, "[i]t bars not only issues actually litigated but also those which 'should have been raised in previous litigation'" (159 Vt at 56, 615 A2d at 143-144, quoting *American Trucking Assns., Inc. v Conway*, 152 Vt 363, 370, 566 A2d 1323, 1328 [1989]). The purpose of the judicially crafted rule is to "protect the courts and the parties against the burden of relitigation, encourage reliance on judicial decisions, prevent vexatious litigation and decrease the chances of inconsistent adjudication" (159 Vt at 57, 615 A2d at 144).

In *Roddy v Roddy* (168 Vt 343, 721 A2d 124 [1998]), the court precluded a mother from seeking supplemental maintenance after entry of divorce and maintenance and child support orders without having to show a change of circumstances. The court found that the mother "could have, and should have, sought the maintenance supplement in connection with the original divorce and child support proceeding" (168 Vt at 347, 721 A2d at 127).

In *Grant v Grant* (136 Vt 9, 383 A2d 627 [1978]), the parties appeared before the District Court of the Virgin Islands, which granted a divorce but did not award alimony although the decree provided the court would determine alimony upon motion. The former wife then commenced an action in Vermont seeking to modify the decree to provide for alimony although she did not allege a change of circumstances. The court noted that the record did not indicate why alimony was not awarded. It was clear, however, that "the failure to award alimony was not the result of a lack of power to do so; and secondly, all the evidence plaintiff presented to the Vermont trial court could have been presented to the Virgin Islands court" (136 Vt at 13, 383 A2d at 629).

It does not necessarily follow that the Vermont Supreme Court would reach the same result in this case as it did in *Roddy* and *Grant*. Plaintiff's counsel did not fail to raise the issue of equitable distribution in the Vermont proceeding. Rather, counsel contended that the court lacked jurisdiction over property located in New York. The argument went directly to the court's power and counsel's ability to raise the issue in Vermont. What is clear is that there was no litigation on the merits of any equitable distribution claims in Vermont and, in fact, the Vermont court specifically concluded that it would not address such claims.

In *Ford v Franklin* (129 Vt 114, 274 A2d 461 [1971]) a Nevada court with personal jurisdiction over the parties had granted a divorce decree which did not, among other things, dispose of jointly owned property located in Vermont.[2] The court held that upon motion by either party, a Vermont court could distribute the property, which "was, and is located in Vermont, and under Vermont jurisdiction" (129 Vt at 122, 274 A2d at 466; *cf. Poston v Poston*, 161 Vt 591, 657 A2d 1076 [1993]; *Avery v Bender*, 124 Vt 309, 204 A2d 314 [1964]).

In this case, the issue of equitable distribution of property was raised in the Vermont proceeding and neither the Vermont trial court nor the defendant challenged the assertion of the plaintiff's attorney that the court lacked jurisdiction over property located in New York. By using the term "[a]ll right," without more, the court placed its seal of approval on the argument of plaintiff's counsel. Whether the court did so because it genuinely believed in the merits of the argument or "to move the parties along" is irrelevant. When the defendant argued that the court should not exercise jurisdiction because of the New York divorce judgment, the court responded with the term "[a]ll right," but immediately ruled as follows:

> "The court will treat your opposition which was filed by letter and your recitation today as a motion to dismiss for lack of jurisdiction. The court will deny the motion on the following grounds . . . ."

---

**2.** The majority asserts that reliance on this case is misplaced, quoting language from the opinion stating that neither defendant nor his attorney appeared at the proceedings. However, the sentence following the quoted language states that "Defendant was duly and regularly served with process in this action, and that more than twenty days have elapsed since the said service of Summons, and the default for said Defendant having failed to appear and answer having been duly and regularly entered herein" (129 Vt at 118, 274 A2d at 463).

In contrast, when plaintiff's counsel argued that the court lacked jurisdiction, the court stated only "[a]ll right," and did not otherwise challenge the assertion as it did when defendant objected to the court's jurisdiction. Had the court disagreed with counsel's statement, then it could be argued that plaintiff should have raised the issue in Vermont. In light of the court's ruling, it cannot be said that plaintiff could have brought an equitable distribution claim in Vermont. Despite the expansive language of section 751, the court rendered itself powerless to decide the issue.

The majority is troubled by the fact that plaintiff engaged in so-called forum shopping by going to Vermont after unsuccessfully seeking a divorce in New York. There is no New York statute, however, prohibiting plaintiff's conduct. There is no statute that provides that a plaintiff who was unsuccessful in seeking a divorce in New York may not come back to New York to litigate any related issues after obtaining a divorce in a foreign jurisdiction. In fact, the opposite is true. Similarly, there is no statute prohibiting a plaintiff who failed to obtain a divorce in New York from trying to do so in another state.

The holding of the majority will do little to discourage another plaintiff who fails to obtain a divorce in New York from going to another state like Vermont. What it will do is ensure that plaintiffs will either seek equitable distribution of property in the foreign state (assuming the court has personal jurisdiction over the spouse), or make it clearer than the plaintiff did in this case that the court did not wish to exercise jurisdiction over the marital property.

Separately, while the Vermont Supreme Court applied res judicata in *Grant* and in *Roddy*, the court has recognized that the judge-made doctrine is flexible and should not be applied mechanically (*see Tudhope v Riehle*, 167 Vt 174, 179, 704 A2d 765, 768 [1997], citing *Delahunty v Massachusetts Mut. Life Ins. Co.*, 236 Conn 582, 591, 674 A2d 1290, 1295 [1996]; *see also Jones v Murphy*, 172 Vt 86, 772 A2d 502 [2001]). Although the issue of equitable distribution was not adjudicated, this was not due to plaintiff's desire to engage in piecemeal and vexatious litigation. It is also not the case that plaintiff wished to avail herself of the equitable distribution statute in New York, rather than the one in Vermont. Rather, the issue was not adjudicated out of a belief, accepted by the court, that the issue could not be resolved in Vermont.

Vermont's broadly worded equitable distribution statute evinces the importance Vermont attaches to ensuring that a for-

mer spouse receives his or her fair share of the marital property. A party may choose to forgo that right, but that is not what occurred here. This case would be different had the court instructed plaintiff to raise the issue of equitable distribution rather than failing to challenge the statement by plaintiff's counsel that the court did not have jurisdiction.

*Roddy* involved supplemental maintenance, which was pegged to the need of the children. The former wife would have had a remedy in Vermont if she could have shown a change of circumstances. *Grant* involved alimony, and the former spouse would also have had a remedy in Vermont upon proof of a change of circumstances. In addition, she could have commenced an action in the Virgin Islands since the court there retained jurisdiction over alimony.

This case involves the outright disposition of property. If plaintiff is precluded from seeking her fair share of marital property, then she will receive no marital property from a long term marriage (she took almost no marital property when she left the marriage) in which she was primarily responsible for rearing eight children and maintaining the marital home. Plaintiff will not receive what the lower courts found she was entitled to—equal distribution of marital assets, including the marital home, defendant's various investments and bank accounts, and his pension.

The Full Faith and Credit Clause should not preclude the current action seeking equitable distribution.

Accordingly, I would affirm the order of the Appellate Division.

Chief Judge Kaye and Judges Rosenblatt, Graffeo and Read concur with Judge Ciparick; Judge G.B. Smith dissents and votes to affirm in a separate opinion.

Order reversed, etc.