2006 VT 109

### In re Appeal of Final Order on Request for Reconsideration of the Cost Report Findings for Berlin Health & Rehabilitation, Inc.

[912 A.2d 449]

No. 05-407

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 3, 2006

*Gary L. Franklin* of *Primmer Piper Eggleston & Cramer, PC,* Burlington, for Appellant.

*Marjorie Power,* Montpelier, for Appellee.

¶ 1. **Reiber, C.J.** Berlin Health & Rehabilitation, Inc., a Vermont nursing home facility, appeals pursuant to 33 V.S.A. § 909(a)(1) from the Director of the Division of Rate Setting's partial denial of its request for reconsideration of the facility's "allowable costs" for 2002. At issue is the disallowance of certain legal fees that Berlin incurred in connection with the unionization of its employees. Specifically, Berlin challenges the disallowance of fees incurred in connection with unfair-labor-practice (ULP) charges brought by the union, and fees incurred for activities related to a decertification election. As discussed below, we conclude that our review of appeals brought under 33 V.S.A. § 909(a)(1) is limited to pure questions of law. Because this case involves unresolved disputes of fact and presents mixed questions of fact and law, we remand the case to the Division. Within thirty days of the date of this order, Berlin may pursue its appeal to either the superior court or the Secretary of the Agency of Human Services as provided by 33 V.S.A. § 909(a)(2), (3).

¶ 2. We begin with a very general overview of the rate-setting process involved in this appeal. The Division provides the Agency of Human Services "with special financial, accounting, auditing and related legal expertise for the purpose of rate setting." 33 V.S.A. § 902(a). Pursuant to a statutory mandate, *id.* § 904(a), it has developed procedures for determining the rates that will be paid to nursing homes for the care of state-assisted individuals. See "Methods, Standards and Principles for Establishing Medicaid Payment Rates for Long-Term Care Facilities," 4 Code of Vermont Rules 13 010 001, Vermont Division of Rate Setting Rules (hereinafter V.D.R.S.R.). The rates are designed to be sufficient to ensure that quality standards are maintained, subject to payment limits developed by rule that aim to encourage the economic and efficient operation of nursing homes, among other goals. 33 V.S.A. §§ 906, 907.

¶ 3. Very generally speaking, nursing home rates are based on the allowable costs identified and reported to the Division by each nursing home facility. See *id.* § 905; see also *id.* § 906 (payment rate for each facility is the sum of its per diem allowance for each cost category, subject to payment limits developed by rule). To this end, each long-term care facility participating in the Vermont Medicaid program must annually submit a uniform financial and statistical

report (cost report) that covers the provider's fiscal year. See V.D.R.S.R. 3.2. The Division then performs a "uniform desk review" on each cost report to determine the adequacy and completeness of the report, the accuracy and reasonableness of the data recorded therein, and the allowable costs, and it develops a summary of the results of its review. *Id.* 3.4(a).

¶ 4. Before the Division issues any findings on a uniform desk review, it must serve a draft of its findings on the affected provider. *Id.* 15.1. The provider may then request the Division's work papers as well as an informal conference with the Division's staff. *Id.* 15.1(b), 15.2(a). If an informal conference is held, the Division must thereafter issue an "official agency action." *Id.* 15.2(b). An aggrieved provider may then file a request for reconsideration, which may also include a request for a hearing. *Id.* 15.3(a), (d)(1). Under V.D.R.S.R. 15.3(i), the hearing is not subject to the requirements of the Vermont Administrative Procedure Act, 3 V.S.A. chapter 25, but is instead conducted by the Director or his or her designee. *Id.* 15.3(g). If the provider so requests, the Division staff involved in the official action must appear and testify. *Id.* Berlin, the provider in this case, made no such request.

¶ 5. Once the Director has issued its final order on a request for reconsideration, an aggrieved party may file an appeal pursuant to 33 V.S.A. § 909(a) and V.D.R.S.R. 15.5-15.7. Section 909(a) provides an aggrieved party with three methods of challenging the Director's decision: (1) a right of direct appeal to this Court; (2) an "appeal de novo to the superior court of the county where the nursing home is situated"; or (3) a "review by the secretary of human services." 33 V.S.A. § 909(a)(1)-(3).

¶ 6. With this process in mind, we turn to the facts presented here. Given the nature of the record on appeal, discussed in greater detail below, the following facts appear to underlie the rate-setting process that is in dispute here. Berlin is a private, for-profit nursing facility that participates in the Vermont Medicaid program. It is managed by CPL Subacute, LLC, and it is part of a large multi-national chain of nursing homes. A unionization effort arose at the Berlin facility, which CPL opposed. CPL hired Jackson Lewis, a large national law firm whose specialty is employment law, including union avoidance and collective bargaining.

¶ 7. In August 2000, Berlin's employees voted to be represented by a union. The first contract was negotiated between October 2000 and January 2002. Although the parties agreed to the terms of a one-year

contract in January 2002, the contract was not executed until August 2002. During the negotiation period, the union filed numerous ULP charges with the National Labor Relations Board (NLRB). In October 2002, a group of employees filed a petition to decertify the union. An election was held in November 2002, and the union was retained. Bargaining on a new contract began in earnest in fall 2002, and the parties agreed to the terms of a new three-year contract in February 2003.

¶ 8. During this period, Berlin's reported legal expenses increased dramatically. The bulk of the fees were billed by Jackson Lewis for services related to the unionization of Berlin's employees. From legal costs totaling less than $10,000 for the two previous years combined, Berlin spent $258,507 on legal services during fiscal year 2000, $174,200 of which the Division disallowed. The allowed costs of $84,307 were treated as nonrecurring contract negotiation costs and amortized over three years.

¶ 9. In its 2001 cost report, Berlin claimed legal fees of $201,987. The Division's auditor divided these fees into two categories: services that seemed to be related to several ULP charges filed by the union ($60,639), and other fees. He disallowed all of the fees. On Berlin's request for reconsideration, the Director affirmed the auditor's decision as to the first set of fees, concluding that Berlin had failed to carry its burden of proof that its legal costs relating to the NLRB matters were for activities carried out in compliance with the National Labor Relations Act as required by relevant regulations. The Director treated the remaining legal fees incurred in 2001 ($138,567) as unallowable collective-bargaining costs. He disallowed these fees on the basis that a reasonable sum had already been allowed for the first contract negotiations. The Director found both the hourly rates and the number of hours billed by Jackson Lewis excessive. He did allow one additional hour of preparation time for each hour spent in direct negotiations, however, and therefore allowed legal costs of $54,960. These fees were classified as recurring costs, and the Director noted that it had been error to treat Berlin's allowable costs in 2000 as nonrecurring. Berlin did not appeal from this decision.

¶ 10. Berlin then submitted the 2002 cost report at issue in this appeal, which similarly included substantial legal fees from Jackson Lewis. In March 2005, the Division sent Berlin draft findings pursuant to its uniform desk review of the cost report. Berlin requested the Division's work papers and an informal conference. In

April 2005, the Division issued its official action on the informal conference. Berlin then filed a request for reconsideration, accompanied by supporting information. A hearing was held in June 2005, and the record was left open for the receipt of additional information until July 2005.

¶ 11. In August 2005, the Director issued his decision and final order on Berlin's request for reconsideration. As relevant to this appeal, he adopted Berlin's characterization of the various legal fees, and allowed fees totaling $74,750. These costs, which the Director classified as nonrecurring, related to the first and second contract negotiations, as well as the drafting and implementation of the terms of the first agreement. The Director affirmed the auditor's disallowance of fees that related to ULP charges filed by the union, as well as fees incurred for activities relating to a decertification election. Berlin then appealed directly to this Court pursuant to 33 V.S.A. § 909(a)(1).

¶ 12. On appeal, Berlin asserts that the Director committed clear error in disallowing the legal fees at issue. It maintains that the Director misapplied the relevant standard in reaching his conclusion, and that his decision is not supported by the "uncontroverted" evidence in the record. Berlin also argues that the Director's decision is internally inconsistent, and that he failed to make findings necessary to support his decision. Finally, Berlin argues that the legal fees that were allowed should not have been characterized as nonrecurring under V.D.R.S.R. 4.3(a).

¶ 13. In support of its claims of error, Berlin has set forth its version of the facts, which differ from the facts found by the Director. As support for its characterization, Berlin cites "uncontested" testimony presented by its witnesses at the ex parte hearing. Berlin maintains, for example, that its goal in hiring Jackson Lewis was "to ensure compliance with the law in dealing with the union and to obtain assistance in attaining an appropriate economic structure to the labor contract." The Director made no such finding. Instead, he found that CPL management decided to oppose the formation of the union and therefore hired Jackson Lewis, whose specialities include union avoidance and collective bargaining.[1] Similarly, Berlin asserts

---

[1] The Director stated that the activities of CPL and the demeanor of the witnesses at the hearing clearly showed that the company was determined to prevent the recognition of a union and successful collective bargaining at Berlin. He found CPL's decision to hire Jackson Lewis a prime indicator of this intent.

that the union "was extraordinarily aggressive and demanding in terms of [its] expectations for the first contract," and that the union filed ULP charges against Berlin as a method of applying pressure during negotiations. These are not findings of fact made by the Director.

¶ 14. Berlin's repetition of its view of the facts, which mirrors its one-sided presentation, illustrates the difficulty inherent in considering this case without an adversarial proceeding below. Our review is also hampered by the fact that the Director's designee oversaw the reconsideration hearing and authored both the final order being challenged on appeal, as well as the appellee's brief. We cannot rely on the assertions that Berlin's evidence was uncontroverted because by rule and by choice, Berlin was the only party to offer evidence at the hearing. We cannot discern from the record what the facts are in this case, and we consequently cannot engage in appellate review of the Director's decision. We conclude that, while 33 V.S.A. § 909(a)(1) provides a right of direct appeal to this Court, we are unable to perform this function on the record that has been provided here. Cf. *Amiot v. Ames*, 166 Vt. 288, 293-94, 693 A.2d 675, 678-79 (1997) (where sparsity of record prevented Supreme Court from deciding legal issue on appeal, and where factual issues remained in dispute, case was remanded to trial court for further development of the record and reconsideration of legal claim).

¶ 15. Our conclusion is consistent with the statutory scheme created by the Legislature. The review conducted by the Division is essentially an audit. Pursuant to 33 V.S.A. § 909(a)(2)-(3), an aggrieved nursing home facility has the opportunity to develop a more complete record and participate in a contested proceeding before either the Secretary of the Agency of Human Services or the superior court. These bodies are suited to resolve disputes of fact and to address mixed questions of fact and law in the first instance. As we have previously noted, a de novo review by the superior court:

> allows for the development of a full record that might not have been prepared within the Division because various stages of appeal to the Division are not contested proceedings, with both sides presenting evidence, but rather consist of opportunities for Medicaid providers to petition the Division to amend its initial determination of their reimbursement rate.

*In re Mayo Health Care, Inc.*, 2003 VT 69, ¶ 8, 175 Vt. 605, 830 A.2d 129 (mem.).

¶ 16. Similarly, if a party opts for review by the Secretary, the Secretary must designate an independent appeals officer who must be a registered or certified public accountant, and the appeals officer conducts a contested-case hearing under chapter 25 of Title 3 (the Vermont Administrative Procedure Act), subject to the rules of evidence and with the power to subpoena witnesses and documents and administer oaths. 33 V.S.A. § 909(a)(3). A party aggrieved by the Secretary's decision may then obtain judicial review from either the Supreme Court or superior court.[2] *Id.*

¶ 17. We have reached a similar conclusion in other contexts where the Legislature has provided injured parties with multiple avenues of appeal, such as in appeals from probate court and workers' compensation awards. Although the statutory language differs, we find the rationale underlying these decisions equally compelling here.

¶ 18. In probate cases, for example, the Legislature provided both the superior court and this Court with jurisdiction over appeals. See 12 V.S.A. § 2553 (superior court has "appellate jurisdiction of matters originally within the jurisdiction of the probate court"); *id.* § 2555 (injured parties have right of appeal to superior court); *id.* § 2551 (Supreme Court has "jurisdiction of questions of law arising in the course of the proceedings of the superior and probate courts in probate matters, as in other causes"). Faced with this statutory scheme, we concluded that our review of direct appeals from final probate decrees was limited to "'pure' questions of law, the resolution of which do not depend upon factual distinctions and do not require review of the record." *In re Estate of Johnson*, 158 Vt. 557, 559, 613 A.2d 703, 704 (1992). Like interlocutory appeals under V.R.A.P. 5(b), we explained, "[w]here factual distinctions could control the resolution of an issue presented from a probate proceeding, the issue is not appropriate for review by this Court." *In re Estate of Johnson*, 158 Vt. at 559, 613 A.2d at 704. In reaching our conclusion, we reasoned that the Legislature did not intend "to create a forum choice for litigants," and our interpretation of § 2551 avoided inconsistency and minimized concurrent jurisdiction. *Id.* at 560, 613 A.2d at 705. We found these considerations, as well as the

---

[2] Because the issue is not directly before us, we express no opinion as to the nature of our review of appeals from the superior court or appeals from a proceeding before the Secretary.

consistent administration of justice, legitimate state interests that were advanced by our holding. *Id.*

¶ 19. Because the resolution of the issues presented on appeal in *In re Estate of Johnson* necessitated consideration of the particular procedural and substantive facts of the case, we concluded that they were more appropriately addressed in superior court pursuant to 12 V.S.A. §§ 2553 and 2555. *In re Estate of Johnson*, 158 Vt. at 559-60, 613 A.2d at 704. To avoid an unduly harsh result, given that the time for filing an appeal had expired, we transferred the case directly to the superior court. *Id.* at 560, 613 A.2d at 705.

¶ 20. We reached a similar conclusion in *In re J.C.*, 169 Vt. 139, 143, 730 A.2d 588, 590-91 (1999). In that case, an aggrieved party filed a direct appeal with this Court from an order of the probate court, arguing that the probate court had erred as a matter of law in reaching its decision. We concluded that we lacked jurisdiction over the appeal because it did not "present a pure question of law capable of resolution without reliance upon the factual record." *Id.* at 140, 730 A.2d at 589. As we explained, the Court's consideration of whether the probate court erred "would invariably require a careful review of the record as a whole and the particular facts and circumstances of the case," which was "precisely the sort of determination more properly left to the superior court." *Id.* at 144, 730 A.2d at 591. We emphasized the policy concerns discussed in *In re Estate of Johnson*, and also noted that allowing such appeals would impede the expeditious movement of cases from probate court to superior court, and impede resolution of the underlying disputes. *Id.* at 145, 730 A.2d at 592. As in *In re Estate of Johnson*, we transferred the case to superior court to avoid an unduly harsh result. *Id.*

¶ 21. In a somewhat similar vein, we have also recognized that, although the Legislature provides claimants with several methods of challenging a workers' compensation award, see 21 V.S.A. §§ 671, 672, these avenues of appeal are mutually exclusive. *Roethke v. Jake's Original Bar & Grill*, 172 Vt. 555, 556, 772 A.2d 492, 493 (2001) (mem.). Thus, an injured party can either directly appeal a question of law to this Court, or it may appeal questions of fact, or mixed questions of law and fact, to the superior court. *Id.* If a claimant chooses the latter, and is aggrieved by the superior court's decision, he or she may then appeal that decision to this Court. *Id.*

¶ 22. In this case, as in *In re Estate of Johnson*, we conclude that restricting our review of direct appeals from the Division to pure questions of law discourages forum shopping, "avoids inconsistency

and minimizes concurrent jurisdiction." 158 Vt. at 560, 613 A.2d at 705. It is also consistent with the nature of the uniform desk-review process used by the Division. Rather than require the Division to hold a contested-case hearing on every challenge to a cost report — a procedure that is expressly precluded by statute — a complete factual record can be developed before the superior court or the Secretary should such factual development be necessary. To serve these goals, therefore, we will limit our review in direct appeals brought under 33 V.S.A. § 909(a)(1) to those questions "capable of accurate resolution . . . without the benefit of a factual record." *In re Estate of Johnson*, 158 Vt. at 559, 613 A.2d at 704 (citation omitted). Because the claims of error raised by Berlin involve disputes of fact and mixed questions of fact and law, they must first be addressed by the superior court or the Secretary.[3]

¶ 23. As in *In re Estate of Johnson*, 158 Vt. at 560, 613 A.2d at 705, were we to dismiss the instant appeal, Berlin would be without recourse to pursue its appeal to either the Secretary or the superior court because the time for filing an appeal to those bodies has expired. To avoid this result, which would be harsh and unjust due to Berlin's reliance on 33 V.S.A. § 909(a)(1), we remand to the Division and allow Berlin thirty days from the date of this order to pursue its appeal elsewhere. See 4 V.S.A. § 2(b) (Supreme Court has "jurisdiction to issue all . . . orders that may be necessary to the furtherance of justice"); see also *State v. Hunt*, 150 Vt. 483, 488-89, 555 A.2d 369, 373 (1988) (Supreme Court has supervisory authority to direct a change of venue "to prevent a failure of justice"), *cert. denied*, 489 U.S. 1026 (1989).

*The appeal is remanded to the Division of Rate Setting subject to Berlin's exercise of its right to appeal as follows: within thirty days of the date of this order Berlin may appeal the Director's decision pursuant to 33 V.S.A. § 909(a)(2), (3).*

---

[3] Once a complete factual record has been developed, these bodies can also decide if Berlin's claims are barred in whole or in part by the doctrine of issue preclusion, given Berlin's failure to appeal the Division's decision on its 2001 cost report. See *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 58, 615 A.2d 141, 144-45 (1992) (affirming trial court's decision that issue preclusion barred nursing home provider from relitigating issue of proper standard of review to be employed in appeals to superior court under 33 V.S.A. § 909(a)(2)).