STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re King Garage Construction Permit | } | Docket No. 202-9-08 Vtec |
| (Appeal of Hardacre) | } | (Appeal from Winooski DRB) |

} 

} 

} 

## Decision on Pending Motions

This appeal concerns an application by Anne Marie King for a permit to construct a garage to replace the existing garage attached to her pre-existing single family home located in a heavily settled residential development in Winooski. When the City of Winooski Zoning Administrator issued a construction permit for the proposed replacement garage, Ms. King's neighbor, Rita Hardacre, had several concerns and therefore appealed the issuance of the King construction permit to the City of Winooski Development Review Board ("DRB"). A number of area residents appeared before the DRB to express concerns similar to those of Ms. Hardacre. When the DRB affirmed the issuance of the construction permit, Ms. Hardacre filed a timely appeal with this Court.

Ms. Hardacre ("Neighbor") is assisted in these proceedings by Jon T. Anderson, Esq., and David W. Rugh, Esq. Ms. King ("Applicant") is assisted in these proceedings by Vincent A. Paradis, Esq. Fifty-four area residents[1] have also appeared before this Court as Interested Persons, all of who have chosen to represent themselves. Of those residents, only Donald R. Brunelle has submitted a filing to the Court concerning the pending pre-trial requests.[2]

Now pending before the Court are cross-motions for summary judgment. Applicant asserts that the only legal issue properly before this Court is a question of conformance with the applicable setback requirements. Applicant contends that her proposed replacement garage

---

[1] The area residents who have filed notice of their intent to participate in this appeal as Interested Persons are Normand J. Shaw, Robert R. Bagley, Catherine Smith, James T. Brown, Leonard St. Gelais, Darlene M. Arel, Elmer C. Arel Sr., Sandra Croisetiere, George Lemnah, Gladys Lemnah, Jean Hardacre-Fergus, Judy A. Fredette, Cecile Brunelle, Ray Brunelle, Claudette Lavalley, Michael Lavalley, Maureen Companion, Florence M. Saucier, Laurie Leigh Bresnahan, Dorothy H. Gruzeski, Joseph Gruzeski, John Galle, Josephine D. Galle, Mary Galle, Donald R. Brunelle, Elveta Brunelle, George Olgyay, Maria Olgyay, Nancy E. Montague, Nancy O'Grady, Victor Tirrito, Debra Tirrito, Roger Greenough, Robert Martin, Roger Rollins, Laurie C. Cantus, C. D. Eddy, Penelope J. Harman, William Harman, Diane Desautels, Elijah Phillips, Kari Phillips, Charlotte Companion, Sue Breen, Paul A. Brodeur, Pauline R. Brodeur, Normand J. Poirier, Coralyn Poirier, Jeanne Dube, Pamela Hatin-Eudy, Barbara S. Hatin, Jacqueline Rabidoux, Leo Bresnahan, and Gerald Eddy.

[2] Mr. Brunelle notes after his signature on his January 14, 2009 filing that it is submitted "[o]n behalf of the interested parties of record."

1

conforms to the applicable setback requirements and that she is therefore entitled to the requested construction permit as a matter of law. Neighbor agrees that conformance with the applicable setback requirements is at issue in this appeal, but contends that the proper interpretation of the applicable setback requirements renders the proposed garage incapable of conformance and that she is therefore entitled to judgment as a matter of law. Neighbor also asserts that to construct and use the proposed garage (in the manner that Neighbor understands Applicant intends to do) requires additional approvals, including conditional use approval and confirmation that the intended use is an allowable home occupation. The legal issues posed by both primary parties incorporate all five Questions presented to the Court in Neighbor's Statement of Questions.

The primary parties have thoroughly researched and briefed the legal issues that this appeal presents to the Court. They have also submitted Statements of Undisputed Material Facts, as is required by V.R.C.P. 56(c)(2). While each party submitted a further statement, identifying the disputes they have with the material facts suggested by the other party, it appears to the Court that no facts that are material to our resolution of all legal issues properly before us are, in fact, disputed. Rather, the parties have several sincere disagreements about how the applicable law, including local zoning ordinance provisions, should be applied to the undisputed facts. We therefore first recite the undisputed material facts as we understand them and thereafter discuss the proper application of the applicable law and legal precedent to the legal issues that we have the jurisdictional authority to address.

### Background Facts

For the sole purpose of putting the pending motions in context, we recite the following material facts, which we understand to be undisputed unless otherwise noted:

1. Applicant owns property located at 70 Bernard Street in Winooski which is currently improved with a single-family residence, including a garage attached to the residence. The property was originally known as Lot 28 in the former Dion Brothers subdivision, circa 1957.

2. The subject property is located in the Residential, Low Density Zoning District ("R-1 District").

3. Applicant wishes to replace her existing garage with a larger garage. Both the existing and proposed garages are depicted on the sketch attached to Applicant's Zoning Permit Application ("Application"), a copy of which Applicant submitted as Exhibit 3. We have attached to this Decision a copy of the portion of the Application that contains Applicant's

2

sketch of the site. We make this attachment solely for illustrative purposes. The record does not reveal that this sketch is to scale and, if so, what scale.

4.     The existing garage measures 20 feet long by 24 feet wide, thereby consisting of 480 square feet. The proposed garage would measure 30 feet long by 32 feet wide, thereby consisting of 960 square feet.

5.     Both the existing and proposed garages are one story tall, with a peaked roof parallel to the peak of the single-story, ranch-style residence. The existing garage at its peak is 19 feet tall; the proposed garage at its peak will be 21 feet tall.

6.     Applicant's property is located at the corner of Bernard Street and Gail Street; the property consists of approximately 100 feet of road frontage on each street. The junction of these two streets creates an interior angle of about 100°.

7.     Applicant's existing home and garage are not quite parallel to either street. Applicant's estimate that the residence sits at about a 15° angle to Bernard Street has not been disputed by any other party to this proceeding.

8.     The front of Applicant's residence, which includes the front door, faces Bernard Street. The driveway serving Applicant's residence, leading from Applicant's garage, is accessed from Gail Street. The Gail Street driveway serves as the sole vehicular access for the property.

9.     Both Bernard Street and Gail Street are public highways located in rights of way, as depicted on the site plan for the original development, a portion of which Applicant photocopied and filed as Exhibit 1 in support of her summary judgment motion. Applicant's property is identified on Exhibit 1 as Lot 28.

10.    Applicant located the concrete monument and metal pins that delineated the boundary lines of her developable land and the extremities of the 50-foot right of way in which each public street lies. The northeast corner of Applicant's proposed garage will be the closest structure point to both Bernard Street and to Gail Street. Applicant measured this corner as being 22 feet from Bernard Street and 15 feet, 10 inches from Gail Street. Applicant submitted several photos (Exhibits 10–13) depicting his measurements. No party has refuted these measurements.

11.    Applicant has represented that the proposed garage will be used solely "for the personal motor vehicles belonging to the residents of 70 Bernard Street." Applicant's Statement of Undisputed Facts at ¶ 6.

12. Neighbor and other nearby residents are concerned that Applicant will put the proposed garage to additional uses, including for the installation of a vehicle lift mechanism commonly used in commercial garages, as a business office, and for repair and storage of automobiles slated for repair or competitive racing.

13. Some of Neighbor's concerns are premised, at least in part, on statements that Applicant or her fiancé, the owner of RC Motorsports, have made when discussing the proposed garage with their neighbors. Neither Applicant nor her fiancé have refuted that they made such out-of-court statements.

14. Applicant submitted her complete application for the construction of the proposed garage on July 1, 2008. The Zoning Administrator determined that the construction application conformed to all applicable provisions of the City of Winooski Zoning Ordinance ("Ordinance") and thereafter issued Revised Zoning Permit (#BN070) ("Revised Permit"), which was scheduled to become final on July 17, 2008. Applicant submitted a copy of Permit #BN070 as Exhibit 5 in support of her summary judgment motion.[3]

15. Neighbor filed a timely appeal of the Revised Permit to the DRB, which conducted a hearing on Neighbor's appeal on September 4, 2008. The DRB took testimony and received exhibits both for and in opposition to the pending permit application. The DRB thereafter rendered findings and a decision, in which the DRB announced its conclusion that the proposed garage "meets setback, building height and floor area ratio requirements of the Winooski Zoning Ordinance." The DRB sustained the Zoning Administrator's issuance of the Revised Permit and denied Neighbor's appeal. It is from that determination that Neighbor appealed to this Court.

## Discussion

Summary judgment is only appropriate when the Court determines "that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). When both parties move for summary judgment, as is the case here, each motion is to be analyzed while giving the opposing party the benefit of all reasonable doubts and inferences. Alpine Haven Prop. Owners Ass'n, Inc. v. Deptula, 2003 VT 51, ¶ 8, 175

---

[3] The Zoning Administrator first issued a "Pending" Zoning Permit that incorrectly listed the proposed use as "MULTI-FAMILY DWELLING." (See Exhibit 4.) The Revised Permit (Exhibit 5) lists the new garage's proposed use as "SINGLE FAMILY DWELLING." We understand this to mean that the proposed garage would be part of the single-family structure on the property to which it is attached and that the garage's authorized use was solely in connection with its integrated single-family dwelling.

Vt. 559. In determining whether a dispute over a material fact exists, a court must accept as true all material allegations made by the opposing party, "so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28 (1999) (citing Chapman v. Sparta, 167 Vt. 157, 159 (1997)). In our analysis below, we have attempted to view all material facts in such a manner. As noted above, it appears from the record before us that while the parties have a sincere dispute as to the proper application of the applicable law to the facts of this case, they do not dispute the facts the Court has deemed material, all of which are listed above. We therefore next address the parties' legal disputes, to the extent that the jurisdictional limits of this appeal allow us to do so.

Neighbor has listed five Questions for our review in her Statement of Questions. We summarize those Questions as follows:

1. Does the proposed garage comply with the applicable setback requirements?

2. Is the suggested use or the proposed garage itself a lawful accessory use or structure?

3. Does the proposed garage comply with the conditional use approval requirements?

4. Does the proposed garage satisfy the applicable standards for a lawful home occupation?

5. Should conditions be placed upon the use of the proposed garage?

We review each Question below.

## Question 1: Setback Requirements

Applicant's parcel, being somewhat trapezoidal and located at the intersection of two streets, requires greater analysis than is usually required when setback compliance questions arise, as noted by one authoritative treatise on land use: "Setback and yard restrictions present special problems when the lots to which they apply are not the common, rectangular plots with one side, usually the smaller dimension, fronting on a street. Corner lots, for example, may pose a special problem . . . ." American Law of Zoning § 9:61, at 9-197 (5th ed. 2008). In light of this challenge, we first start with a review of the uncontested legal issues relating to setbacks.

When new development projects are presented for properties in the R-1 District, the project applicants must present evidence that their development proposal will respect a 20 foot front yard setback and a 15 foot side and rear yard setback. Ordinance § 4.004. All of the

parties appear to agree that the front of Applicant's residence generally faces Bernard Street and that, even at its closest point, the residence is more than 20 feet away from Bernard Street. Perhaps we should say that all parties agree that Bernard Street abuts a front of the King residence, since Neighbor asserts that the front yard setback requirement also governs the limits for construction in the portion of Applicant's yard that abuts Gail Street. Our first point is to make clear that there is no dispute that the new garage as proposed satisfies the minimum setback from Bernard Street.

The central dispute in this appeal is which setback limit applies to Applicant's yard to the west of her residence—the yard that abuts Gail Street. If the setback limit for side yards applies, then the proposed garage complies; if the setback limit for front yards applies, then the application must fail.

Commentators and courts have repeatedly noted that a municipality has the discretion to determine which setback limits should apply to which yards of a corner lot:

> Some municipal ordinances undertake to provide rules which govern corner lots. To firm up the regulation of the problem, some municipalities define "corner lot." Some ordinances permit the owner of a corner lot to select which side constitutes the front, and which the side of his lot. Under such an ordinance, an owner may not construct an entrance facing one street and arbitrarily name the other as the front of his lot. He is said to have selected when he constructed the entrance.

American Law of Zoning § 9:61, at 9-197 (5th ed. 2008).

We are presented with a more intricate legal analysis in the case at bar, since Winooski has not chosen to specify which limits apply to which yards of a corner lot. Rather, the Winooski Ordinance provides the following direction in defining a front yard: "That open space defined by the dimension between the nearest portion of a principal building in a lot and the front property line of the lot." Ordinance § 2.052 (defining "Yard, Front"). The Winooski Ordinance does not provide guidance on what should be regarded as the "front property line" of a corner lot.

Neighbor presents two skilled arguments in support of her position that the front yard setback should be applied to the yard that lies between the northeast corner of the proposed garage and Gail Street. First, Neighbor argues that if indeed the front of Applicant's residence fronts onto Bernard Street, and the northeast corner of the proposed garage is indeed a part of the front of the residence (both of which are undisputed facts), then that corner represents a violation of the setback limit, since "setback" is defined in the Ordinance as the "distance between the

6

nearest portion of a building projection on a lot and the right-of-way of the street or property line." Ordinance § 2.044. To arrive at this interpretation, one must measure from this "front" corner of the proposed garage, not across the front yard, but across the yard to the west, towards Gail Street. The definition Neighbor references for "setback" applies to all setbacks, be they front, side, or rear setbacks. Thus, Neighbor's first argument relies upon an assumption that the Winooski Ordinance provides notice to corner lot owners that a setback can be measure to any street (not merely the street from which the setback refers to) or—more generally—that their property may encompass more than one front yard.

This assumption also serves as the basis for Neighbor's second argument for why Applicant's proposed garage fails as a matter of law—namely, that the phrase "front property line" should be read in the plural context, thereby directing that corner lots have multiple front property lines. This second argument is based upon the directive in the Ordinance that "words in the singular number include the plural number," Ordinance § 2.000, which reads in its entirety as follows:

> 2.000 GENERAL MEANING OF TERMS
>
> Definitions contained in the Vermont Planning and Development Act Title 24, Chapter 117, Sections 4303 and 4406 shall be applicable throughout these regulations. When not inconsistent with the context, words used in the present tense include the future, words in the plural number include the singular number, [and] words in the singular number include the plural number. The word "shall" is mandatory and not merely directory. The word "person" or "applicant" includes a firm, association, corporation, partnership, company or other organization, as well as an individual. The word "lot" includes the words parcel or plot.

The principal question that Neighbor's two arguments presents is: does the Winooski Ordinance provide sufficient notice to an owner of a corner lot that the front-yard setback provision will apply to more than one yard of their property? We frame the question in this manner because of the well-settled general directive from our Supreme Court that since zoning regulations are in degradation of common law property rights, when we are called upon to "'constru[e] land use regulations any uncertainty must [therefore] be decided in favor of the property owner.'" In re Weeks, 167 Vt. 551, 555 (1998) (quoting In re Vitale, 151 Vt. 580, 584 (1989)). See also Glabach v. Sardelli, 132 Vt. 490, 494 (1974)("[Z]oning ordinances are to be strictly construed in view of the fact that they are in degradation of common law property rights,

. . . when exemptions appear in favor of the property owner, the exemptions shall be construed in favor of the owner.") *overruled on other grounds by* Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561 (1992).

We find no clear notice in the Winooski Ordinance that a corner lot owner's use of her property will be limited by the application of the front-yard setback to two or more yards of her lot. We also have searched, and found no specific authority or precedent for the proposition that in the absence of a specific ordinance provision, a corner lot owner must respect a front yard setback for more than one yard on her corner lot. In the absence of a specific provision and prior precedent, we are left with the obligation to strictly construe the Winooski Ordinance in favor of the corner lot owner. Given that the front of Applicant's residence is primarily orientated to Bernard Street,[4] and that the front door faces Bernard Street, we conclude that the front-yard setback limit applies to the yard between the residence and Bernard Street, and the side-yard setback limit applies to the yard between the residence and Gail Street.

These legal conclusions lead us to further conclude that Applicant is entitled to summary judgment as a matter of law on Appellant's Question 1, since the indisputable facts are that Applicant's residence lies more than 20 feet from Bernard Street and more than 15 feet from Gail Street.[5] Thus, Applicant's proposed replacement garage, if constructed within the confines of her site plan, conforms to the applicable setback limits of Ordinance § 4.004 for the R-1 District, Area A.

**Question 2: The Proposed Garage as an Accessory Use Site**

Neighbor next expresses her concern that the proposed garage is either an unlawful accessory structure or that the use she believes it will be put to must first be reviewed under the conditional use or home occupation provisions of the Winooski Ordinance. We note that

---

[4] Neighbor asserts in her legal memoranda that Applicant's residence is actually orientated towards the junction of Bernard and Gail Streets. No affidavit or other representation of fact in the record supports this assertion. An undisputed fact presented by Applicant is that her residence aligns 15° off of her boundary line with Bernard Street. (See Exhibit 16, attached to Applicant's Response and Opposition to Appellant's Motion for Summary Judgment.)

[5] Neighbor also suggests that because Applicant's measurement to Gail Street was taken from the foundation wall of her "house [and] because the house has eves of at least a foot, possibly more, Appellee-Applicant's measurements are likely incorrect." (Appellant's Response to Applicant's Motion for Summary Judgment and Cross-Motion for Summary Judgment and Supporting Memorandum, at fn.4.) Again, we decline to recognize this suggestion as a "fact," since it has not been supported by affidavit or documentary evidence. Such is required in the context of a trial court's review of a summary judgment request. Gore v. Green Mountain Lakes, Inc., 140 Vt. 136 (1981). Any encroachment into the side yard setback by the eaves or overhangs of the proposed garage is addressed in our discussion of Neighbor's Question 5 and whether appropriate conditions are warranted.

Neighbor's concerns appear legitimate, given her un-refuted statement that Applicant and her fiancé made representations to her and other area residents about their intention to conduct business, commercial, or other non-residential uses in their new garage. Such representations are unfortunate, not simply due to the concerns they have caused the neighbors. They are also unfortunate because if Applicant intends to conduct such uses in her proposed garage, she has not made such representations in her application and has not applied for authority to do so. In fact, Applicant has represented here that her only intended use for the proposed garage is "for the personal motor vehicles belonging to the residents of 70 Bernard Street." Applicant's Statement of Undisputed Facts at ¶ 6. Further, the Revised Permit issued by the Zoning Administrator that is the subject of this appeal limits the use of the proposed garage as approved as part of a "single family dwelling."

We are a court of limited subject matter jurisdiction. See 10 V.S.A. § 8503 (defining the jurisdiction of the Environmental Court). While litigants, often without purposeful intent, present legal questions to this Court beyond its jurisdiction, we have consistently attempted to maintain the discipline of "respect[ing] our jurisdictional limits." A. Johnson Co. Cond. Use Permit, No. 130-7-05 Vtec, slip op. at 5 (Vt. Envtl. Ct. Mar. 28, 2006) (Durkin, J.), aff'd, No. 2007-113 (Vt. Aug. 2007) (unpublished mem.).

Any determination of our jurisdictional limits in a given appeal must begin with the application under review. See In re Torres, 154 Vt. 233, 235–36 (1990). Since this Court is "limited to consideration of the matters properly warned as before the local board," our jurisdiction is limited to the application put forth for approval. In re Maple Tree Place, 156 Vt. 494, 499–500 (1991) (citing Torres, 154 Vt. at 235)). That application provides the initial limits to what approvals have been requested; if the application is granted, an applicant is authorized to complete the construction as proposed, but no more than that. We therefore review the construction application and resulting Revised Permit in the case at bar as providing the limits of what Applicant has requested and been authorized to do.

We find no request in the pending application that would authorize what Neighbor fears: business activities, including commercial or competitive auto repair, or other non-residential accessory uses in the proposed garage. We therefore conclude that Applicant has not sought nor received authority to conduct such activities. We therefore decline to pass judgment upon a use that has not been proposed or authorized by the Permit now before us on appeal.

9

The portion of Neighbor's legal memorandum devoted to her Question 2 suggests that the proposed garage is an accessory structure and that uses to be conducted in it require conditional use review and approval. No such applications have been made, and we cannot entertain them here. See id.; Torres, 154 Vt. at 235–36. But we also have difficulty with the assertion that a garage attached to and made part of a residence, such as the proposed garage here, must be regarded as an "accessory structure." In fact, neither the Ordinance provision nor the trial court precedent that Neighbor cites supports such a conclusion.

Ordinance § 2.001, in its entirety, reads as follows:

> 2.0010    Accessory Use, Accessory Structure:
>
> A use of a structure which is clearly incidental and secondary to the principal building or use and located on the same lot.

This definition reinforces our common understanding of how most zoning ordinances define an accessory structure: as a separate, detached structure, which is subordinate to the principal structure on the same lot. The garage proposed here is not a separate, detached structure; it is wholly attached on one side and made a part of the residence. The combined home and garage, both existing and proposed, constitute the only structure on Applicant's lot. There is no accessory structure proposal before us in this Application.

In Appeal of Ellen Janson, No. 199-12-97 Vtec (Vt. Envtl. Ct. June 22, 1998) (Wright, J.), the garage at issue was detached from the principal structure on the lot. We have searched, but have not yet found, precedent where a garage that is attached and part of a residential structure has been described as an accessory structure. We find no authority to do so in the Winooski Ordinance. We decline to do so here.

Therefore, we render the following response to Neighbor's Question 2: Applicant's proposed garage is not an accessory structure and there are no accessory uses proposed for it that require conditional use review or home occupation approval. We therefore conclude that Applicant is entitled to summary judgment as a matter of law on Neighbor's Question 2.

**Questions 3 and 4: Satisfaction of the Conditional Use and Home Occupation Standards**

By her Questions 3 and 4, Neighbor challenges whether the proposed garage can satisfy the conditional use standards contained in Ordinance § 4.003 and the home occupation standards contained in Ordinance § 8.700. We decline to address those Questions because the pending application does not seek authority to conduct such uses.

As discussed earlier, when an application has not first been noticed and reviewed by the appropriate municipal panel below, it is improper for this Court to take up the permit questions in the first instance on appeal. In re Maple Tree Place, 156 Vt. at 500; Torres, 154 Vt. at 235–36. Interestingly, the Torres case presented a procedural quandary very similar to that which we have here. Mr. and Mrs. Torres appealed a home occupation permit that their neighbors, the Gonyons, had received from the zoning board of adjustment. During the bench trial on the Torres' appeal, the trial court determined that the Gonyons' application did not conform to the home occupation provisions of the zoning regulations. However, the trial court then allowed the Gonyons to convert their pending application into an application for conditional use approval and thereafter approved their application, with conditions.

The Supreme Court reversed the trial court, concluding that however well intentioned the trial court may have been, it did not have the authority to consider a land use application that had not been first noticed and heard before the municipal panel below. Torres, 154 Vt. at 235–36. The Supreme Court cautioned that "notice and hearing requirements on [an] application to a zoning board are mandatory and jurisdictional, and failure to adhere to these requirements renders the action taken [by the trial court] null and void." Id. at 236.

By her Questions 3 and 4, Neighbor here asks us to consider legal questions that have not been noticed or heard by the appropriate municipal panel below. To consider such Questions requires us to ignore the Supreme Court's directive in Torres, a precedent that has withstood nearly 20 years of review. We decline to consider the pending application within the context of the conditional use and home occupation standards of the Winooski Ordinance, since no such review has been conducted by the appropriate municipal panel in the first instance.

The procedural suggestion Neighbor makes here is perhaps even more egregious than that outlined in Torres, since Applicant is not suggesting that her pending garage be reviewed in such a manner. In fact, Applicant refutes that such review is at all needed, since she represents that her only intended use for the proposed garage is as part of her pre-existing residence. Residential use of the one structure on Applicant's property—a home and attached garage—is a permitted use and thereby is not required to obtain conditional use approval. Ordinance § 4.002. Since Applicant has not suggested nor applied for approval of a home occupation, no review of her application is warranted under Ordinance §§ 8.700 through 8.707.

11

In conclusion, we respond to Neighbor's Questions 3 and 4 by concluding that the pending application does not request nor warrant review or approval under the conditional use or home occupation standards of the Winooski Ordinance. We therefore render summary judgment on both Questions in Applicant's favor.

**Question 5: Whether Reasonable Conditions Should Limit the Proposed Garage's Use**

Neighbor's final Question appears to repeat the general premise of her Question 3, in that she queries whether, "[g]iven the overwhelming single-family residential character of the neighborhood, should reasonable conditions be placed on the use of the proposed 32' X 30' garage to limit its height and to prevent excessive noise and traffic?" Such analysis is usually conducted in the process of a conditional use review pursuant to 24 V.S.A. § 4414(3).[6] As noted above, we decline to conduct conditional use review of Applicant's proposed garage, since by her application, Applicant has agreed to limit her use of the replacement garage to only uses associated with her residence.

Neighbor's last Question highlights another needed review of the pending application. It is apparent even from the limited record before us that some acrimony has been caused by the confusion and uncertainty surrounding Applicant's intended use of this replacement garage. Her conversations with her neighbors and the conversations her fiancé has had as well have contributed to that confusion. This is regrettable and reinforces a maxim the undersigned learned from over twenty-four years of involvement in the land use review process in Vermont: an applicant is best served by being forthright and clear in her representations to her neighbors when considering further development of adjoining property. Many a hearing, including on substantial, multi-million dollar projects, have been conducted in a calm, even boring fashion, because developers took the time well before a land use hearing to talk with area neighbors, summarize their plans in clear, concise language, and listen to the neighbors' concerns, sometimes even responding with project changes to address those neighbors' concerns. Success is not guaranteed when one follows this process, and on the limited record we have before us, we cannot determine whether Applicant had such conversations with her neighbors. But such a

---

[6]  Ordinance § 4.003 governs conditional uses in Winooski; it references 24 V.S.A. § 4407, which was the predecessor section concerning conditional use review and approval. It was converted to 24 V.S.A. § 4414(3) by the Permit Reform Act of 2004.

practice more often leads to a land use review process that does not involve contested hearings, appeals, or other confusions.

We are afforded all the powers and responsibilities as provided to the DRB in its review below of Applicant's proposed garage. Torres, 154 Vt. at 235. Included in such power and responsibility is the discretion to attach "reasonable conditions and safeguards as [the DRB in the first instance, and this Court on appeal] deems necessary." 24 V.S.A. § 4464(b)(2). We conclude that two conditions are necessary to memorialize that the revised Permit first issued by the Zoning Administrator authorizes construction and use of the garage as presented by Applicant, and we include those two conditions below and in the Judgment Order that accompanies this Decision. Pursuant to that statutory authority, we answer Neighbor's Question 5 in the affirmative and hereby craft the following necessary conditions:

1.     The replacement garage shall be constructed in accordance with all of the representations made in the application, including the site plan, a copy of which is attached to this Judgment Order;

2.     No portion of the replacement garage shall encroach into the 20' setback from Bernard Street, nor the 15' setback from Gail street; and

3.     The replacement garage shall only be used for the personal motor vehicles belonging to the residents of 70 Bernard Street.

To the extent that Neighbor suggests that further examination and conditions are permissible within the context of this appeal, we reject that suggestion.

### Conclusion

For all the reasons detailed above, we conclude that Mrs. King's pending application for construction of a replacement garage, as conditioned above, conforms to all applicable provisions of the Winooski Zoning Ordinance. We hereby **AFFIRM** the issuance of Revised Permit #BN070 by the Winooski Zoning Administrator. We make our conclusions, even when viewing the material facts in a light most favorable to Neighbor Hardacre. Because we conclude that there are no material facts in dispute and that the pending garage construction application conforms to the applicable Ordinance provisions as a matter of law, we hereby **GRANT** Applicant summary judgment as to all of the Questions presented in Neighbor's Statement of Questions.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court in this Appeal.

Done at Newfane, Vermont, this 9th day of July 2009.

_____
Thomas S. Durkin, Environmental Judge